158 So.2d 351 (1963)
Succession of Edese HOLLIER.
Dea Aucoin HOLLIER, Surviving Widow, Plaintiff and Appellee,
v.
Philip HOLLIER, Administrator, Defendant and Appellant.
No. 990.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
Rehearing Denied December 20, 1963.
Writ Granted February 14, 1964.
*352 Guillory, Guillory & Guillory, by Isom J. Guillory, Eunice, for defendant-appellant.
Preston N. Aucoin, Ville Platte, Roland B. Reed, Ville Platte, for plaintiff-appellee.
*353 Before SAVOY, CULPEPPER and HOOD, JJ.
HOOD, Judge.
In an inventory of assets belonging to the estate of Edese Hollier, deceased, and filed in the succession proceedings of said decedent, an item of property, identified as Item 141, is listed as being the separate property of the deceased. Shortly after this inventory was filed Mrs. Dea Aucoin Hollier, the surviving widow of the decedent, filed an opposition to it in which she alleges and seeks a judgment decreeing that this item of property constitutes a part of the community which formerly existed between her and the decedent. After trial of the issue presented by this opposition, judgment was rendered by the district court in favor of the surviving widow decreeing that Item 141 in the inventory belonged to the community, and not to the separate estate of the decedent. The administrator of the succession has appealed from that judgment.
The item of property in controversy here is the decedent's interest in a commercial partnership known as "F. Hollier & Sons," the principal place of business of said partnership being in Ville Platte, Louisiana. In the inventory this interest is designated as the "Separate Property" of the decedent, and it is described as follows:
"ITEM 141. A certain undivided interest, say, a 20% interest in and to the partnership of F. Hollier & Sons, which partnership is domiciled at 204 Northwest Railroad Avenue in the Town of Ville Platte, Evangeline Parish, Louisiana. That, among the assets of said partnership is contained, but not limited to, the following real estate, to-wit: (Here follows a description of two tracts of land located in Evangeline Parish).
"APPRAISED BY THE APPRAISERS AT Thirteen Thousand and No/100 DOLLARS $13,000.00."
Immediately following this description in the inventory, and inserted as a footnote to it, there appears the following statement:
"(Only capital is appraised above, because same is separate property. Surplus and current profits are appraised as Item 10-B of this Inventory)."
The above-described partnership interest is the only property listed in the inventory which is designated as "Separate Property," all of the other assets of the succession being classified as community property. Among the other assets, listed as "Community Property," are Items 10-A and 10-B, which are described in the inventory as follows:
"ITEM 10-A. The sum of $8255.85 owed by F. Hollier & Sons, a partnership to Edese Hollier. (Said amount representing profits already earned by said partnership which have been credited to the account of Edese Hollier but have not been withdrawn by him).
"APPRAISED BY THE APPRAISERS AT Eight Thousand Two Hundred Fifty-five and 85/100 DOLLARS $8,255.85.
"ITEM 10-B. An undivided 20% interest in and to the surplus and 1961 profits of the partnership of F. Hollier & Sons, which partnership is domiciled at 204 Northwest Railroad Avenue in the Town of Ville Platte, Evangeline Parish, Louisiana. (This appraisal is made with reference to the surplus and 1961 profits only. The capital of said partnership being appraised herein as Item 141. The reason for the separate appraisal of capital and surplus is that capital is appraised as separate property whereas surplus and 1961 profits are appraised as community property). "APPRAISED BY THE APPRAISERS AT Sixteen Thousand Nine Hundred Thirty-eight and 18/100 DOLLARS $16,938.18."
*354 The evidence shows that in 1928 a commercial partnership known as "F. Hollier & Sons" was organized by oral agreement, with Felix Hollier, Rene Hollier and the decedent as the sole partners. At that time the decedent was married to Mercedes Couvillion, who died on May 6, 1935. In June, 1936, the deceased married Dea Aucoin, the opponent in this proceeding, and he remained married to her until the time of his death, which occurred on September 25, 1961.
Since the partnership was first created in 1928 it has been reorganized several times, and the number of partners and their interests in the partnership has varied considerably. In 1936, for instance, there were five partners, and the decedent owned a 74 percent interest in the partnership. In 1947 he owned a 47 percent interest in it, in 1951 he owned a 32 percent interest, and since 1953 he has owned only a 20 percent interest in the partnership. The evidence does not show how these changes in partners and in interests were effected, whether they were accomplished by dissolving the old partnerships and creating new ones, whether the old partnership agreements were merely modified, or whether the decedent invested community funds in the new or reorganized legal entities.
The only written agreement ever entered into purporting to create a partnership known as F. Hollier & Sons was executed on January 2, 1953. This agreement recites that the eight persons who executed it "severally declared that they organized a commercial partnership among themselves, for the purpose of carrying on a business of buying and selling farm equipment and machinery at retail, commencing on the 2nd day of January, 1953, and continuing for the lifetime of all the partners, * *." The agreement further contains the following statement:
"ARTICLE I. * * * This firm has been in continuous existence since 1928, its membership having been composed of various members of the Hollier family, and a reorganization was effected in 1936."
The evidence does not show whether the 1936 reorganization of the partnership occurred before or after the decedent's marriage in June of that year. And, there is nothing in the record to indicate how that reorganization was accomplished. It does appear, however, that in that reorganization two new partners were taken in, one of the former partners dropped out, and a change was made in the interests owned by one of the former members. Also, there is nothing in the evidence which shows how the reorganizations which occurred in 1944, in 1947 and in 1951 were effected, although there were changes in each of those years in the number of partners as well as in the interests owned by some of them. We think the fact that there were substantial changes in ownership and the interests owned by each partner on these occasions makes out a prima facie case that new partnerships were actually formed in each of those years, and that the decedent acquired his interest in each such new legal entity during his marriage to the opponent here.
But, regardless of the legal effect of the reorganizations which occurred prior to 1953, it seems clear to us that a new partnership was created by the written agreement which was entered into that year. In that agreement the partners declared that the commercial partnership so created was to carry on a business "commencing on the 2nd day of January, 1953." And, in Article II of the agreement, where the "investment" of each partner is set out, it is recited that the decedent, Edese Hollier, invested $13,000.00, in cash, in this newly created partnership. There is no mention in the agreement that the decedent paid this sum from his separate funds, that any of the assets of the old partnership were transferred to new one, or that the interest which the decedent acquired in the partnership by that agreement was to be his separate property.
*355 Under the provisions of the LSA-Civil Code, and particularly Articles 2334, 2402 and 2405, there exists a presumption, juris et de jure, that all property acquired during the existence of the community of acquets and gains in the name of either spouse, whether corporeal or incorporeal, movable or immovable, is an asset of the community. Ford v. Ford, 1 La. 201; J. H. Pearson & Co. v. Ricker & Pearson, 15 La. Ann. 119; Schwab v. Hava, 154 La. 922, 98 So. 420; Busby v. Busby, 168 La. 510, 122 So. 599; Succession of Howell, 177 La. 276, 148 So. 48; Montgomery v. Bouanchaud, 179 La. 312, 154 So. 8. When it is contended that property so acquired is the separate and paraphernal property of one of the spouses, the burden of overcoming the presumption that such property is an asset of the community rests upon the party alleging its separate and paraphernal character. Bass v. Larche, 7 La.Ann. 104; Gogreve v. Dehon, 41 La.Ann. 244, 6 So. 31; Coney v. Coney, 220 La. 473, 56 So.2d 841; Succession of Hemenway, 228 La. 572, 83 So.2d 377; Lotz v. Citizens Bank & Trust Co., La.App. 1 Cir., 17 So.2d 463; Succession of Tullier, La.App. 1 Cir., 53 So.2d 455; Succession of Viola, La.App. 4 Cir., 138 So. 2d 613. This burden is satisfied only when it is proved that the property was acquired and paid for with separate and paraphernal funds, and that proof must be strict, clear, positive and legally certain. Prince v. Hopson, 230 La. 575, 89 So.2d 128; Southwest Natural Production Company v. Anderson, 239 La. 490, 118 So.2d 897; Monk v. Monk, 243 La. 429, 144 So.2d 384; Magnolia Petroleum Co. v. Crigler, La.App. 2 Cir., 12 So.2d 511 (Cert. denied); Lotz v. Citizens Bank & Trust Co., supra.
In the instant case the evidence shows that a new partnership was created by the written agreement entered into on January 2, 1953, that the decedent invested a sum of money in that venture and that in consideration therefor he acquired a 20 percent interest in the partnership. This occurred while he was married to the opponent herein, and accordingly there exists a presumption that the partnership interest which he acquired at that time belongs to the community. The burden of overcoming this presumption rests on the administrator of the succession, and we think he has failed to sustain that burden.
There is another equally valid reason, however, why we think the interest of the decedent in this partnership at the time of his death belongs to the community.
The record shows that on September 20, 1957, James Hollier, one of the partners of F. Hollier & Sons, died. The LSA-Civil Code contains the following provisions relating to the dissolution of partnerships:

"Art. 2876. A partnership ends:
* * * * * *
"3. By the death of one of the partners, or by his interdiction. * * *
"Art. 2880. Every partnership ends of right by the death of one of the partners, unless an agreement has been made to the contrary. * * *
"Art. 2881. The death of one partner dissolves the partnership between the surviving partners, unless there be a contrary stipulation."
Under the above-quoted provisions of the LSA-Civil Code, the death of one of several partners has the effect of dissolving the partnership, even as to the surviving partners, unless the continuation of such partnership is provided for by an express stipulation of the partners. Mathison v. Field, 3 Rob. 44; Buard v. Lemee, 12 Rob. 243; Cane v. Battle, 3 La.Ann. 642; Price v. Succession of Mathews, 14 La.Ann. 11; Champagne v. Keen, 189 La. 681, 180 So. 485; United States v. Fontenot, D.C., 33 F.Supp. 629.
In this case there was no express stipulation by the partners that the partnership was to continue after the death of one of the partners. On the contrary, the written partnership agreement entered into in 1953 *356 specifically provides that the partnership is to be dissolved in case of the death of a partner. Articles VIII and IX of that agreement provide:
"ARTICLE VIII. In case of the death of any partner, it is hereby agreed that the surviving partners shall carry on said business under this agreement or contract, for the benefit of themselves and the legal heirs or representatives of the deceased co-partner until said co-partnership shall be gradually wound up without detriment thereto, which might otherwise be caused by a hasty closing up of the concern. A period of six (6) months is hereby agreed upon to effect said liquidation.
"ARTICLE IX. At the expiration of said co-partnership by voluntary dissolution or by death, the said co-partners each to the other, shall and will make a true, just and final settlement or account of all things as aforesaid and divide the profits as aforesaid and in all things well and truly adjust the same; and upon the making of such final account all and every stock and stocks, as well as the gains and increase thereof, which shall appear to be remaining, whether consisting of monies, wares, debts, accounts, etc., will be divided among them in the proportions hereinabove set out."
Under the law and pursuant to the specific agreement of the partners, therefore, the partnership terminated and was dissolved upon the death of James Hollier, in 1957. According to that agreement a period of six months after the death of a partner was allowed to effect the liquidation, during which time all of the assets of the firm were to be accounted for, liquidated and distributed among the partners according to the interest each owned in it.
The evidence does not show whether the farm implement business known as "F. Hollier & Sons was actually closed up, and its assets liquidated and distributed, following the death of James Hollier, the only information in the record as to what transpired after that time being a stipulation of counsel to the effect that the composition of the partnership changed in 1961, four years after this death occurred, at which time one of the partners was listed as "Succession of James Hollier" and another as "Succession of Edese Hollier." We gather from arguments of counsel that the farm implement business has continued to operate under the same name without interruption since 1957, and we assume that that is the case. But, the fact that the business has continued to operate does not constitute proof that there has been a continuation of the partnership.
Under the law and the facts of this case the legal entity which had been created by the 1953 agreement was dissolved on September 20, 1957, by the death of James Hollier. The partnership which existed in 1961, therefore, obviously was one which was formed by oral agreement sometime after September 20, 1957. It may be that the new partnership was formed by an agreement between the surviving members of the old one and representatives of the succession of the deceased partner, but regardless of who were parties to the agreement we think the conclusion is inescapable from the facts contained in the record that a new partnership was created sometime after the old one was dissolved, and that the decedent thus acquired his interest in that new partnership during his marriage to opponent.
The administrator, in contending that the decedent's interest in the partnership belongs to his separate estate, relies heavily on the case of Kittredge v. Grau, 158 La. 154, 103 So. 723. In that case the decedent acquired a one-fourth interest in a partnership, known as Borelli & Kittredge, during the year 1903. He married Augusta Grau in July, 1904. On August 22, 1904, three *357 of the partners and one other person who replaced the fourth partner incorporated the business under the corporate name of Kittredge-Waters Supply Company, and the decedent received one-fourth of all of the stock which was issued. The partnership then transferred all of its assets to the newly formed corporation. The decedent did not pay any additional amount to the corporation for the stock which was issued to him. The legal issue presented in that case was whether the shares of stock which the decedent owned in that corporation belonged to his separate estate or whether they belonged to the community. In holding that these shares were the separate property of the decedent, our Supreme Court said:
"We * * * rest our decision upon the common sense view that Kittredge acquired his capital stock, not by an actual transfer to him of something which he did not already own, but by the transformation of his interest in the partnership into an interest in the corporation. Every element that made up the value of Kittredge's 15 shares of stock in the corporation had likewise fixed the value of his fourth interest in the partnership." (Emphasis added.)
The facts in the Kittredge case are similar in many respects to those presented here, but there is one important difference in the facts which we think distinguishes that case from this one. In Kittredge the evidence showed that the action taken by the partners in August, 1904, constituted merely the "transformation" of the decedent's interest in the partnership into an interest in the corporation. That was pointed out by the Supreme Court in the later case of Baker v. Baker, 209 La. 1041, 26 So.2d 132, where, in discussing the Kittredge case, the court said:
"In so holding, this court made it clear that Kittredge, during his marriage, did not buy the corporation stock or acquire it in any similar way; in other words, that there was no acquisition under Article 2402 of the Revised Civil Code. * * *"
The Kittredge case might apply to the instant suit if there had been a showing here that in every reorganization of the partnership since 1936 the decedent's interest in the old partnership was clearly his separate property, and the reorganization involved merely a transformation of interests from the old legal entity to the new one, without the acquisition of additional property or the expenditure of community funds by the decedent. But, the evidence in this case does not show that. On the contrary, the 1953 agreement shows clearly that a new partnership was formed and that each partner invested substantial sums of money in it. There is no evidence tending to show that the assets of the previously existing partnership were transferred to the new one or that the decedent was not required to pay or contribute anything further for his interest in the new partnership. For these reasons we do not consider the Kittredge case to be applicable here.
Since the decedent acquired interests in new partnerships during his marriage (in 1953 and sometime after 1957) and there is no showing that these acquisitions were merely "transformations" of interests from one legal entity to another, we conclude that the partnership interest which he owned at the time of his death was community property.
The result would be the same, we believe, if the evidence should be interpreted as showing that each reorganization of the partnership which occurred after 1936 involved merely the transferring of assets from one partnership to another.
Article V of the 1953 partnership agreement contains the following provision:
"ARTICLE V. * * * The profits resulting from the operation of the business will be distributed in the following manner: 25% will be left in the partnership and the balance of 75% will be distributed to the partners in *358 proportion to their interest as set out in Article II."
A substantial portion of the profits resulting from the operation of the business apparently was left in the partnership for sometime after this agreement was entered into. We base that observation on the fact that the agreement provides that that was to be done, counsel for the administrator concedes in his brief that it was done, and Items 10-A and 10-B of the inventory show that the partnership was holding substantial sums of money as undistributed profits and surplus at the time of decedent's death. Our understanding of the manner in which these funds were handled is that the profits which were "left in the partnership" were used in the operation of the business, including the purchase of new merchandise for resale and for other purposes relating to that business as the partners saw fit.
The parties have stipulated that "the books of account of F. Hollier & Sons reflect that the ownership accounts and subsequent undistributed and distributed profits have been kept separate and not commingled in said books." We interpret this to mean that the portion of the profits, 75 percent, which was to be distributed to the partners was kept in a separate account and was not commingled with the funds used in operating the business. But, we also construe it to mean that the 25 percent of the profits which was "left in the partnership" was commingled with and constituted a part of the funds used in operating the business, including the purchase of new merchandise for resale. According to the evidence, therefore, it appears that the profits which were "kept in the partnership," whether designated as "ownership accounts" or by any other title, have been commingled with other assets of the partnership. The evidence does not show that these retained profits can be distinguished from other capital assets of the partnership.
Under the law and jurisprudence of this State the share of the profits which a partner derives from a commercial partnership belongs to the community of acquets and gains which exists between him and his spouse, even though the partnership may have been formed prior to the marriage of the partner. LSA-C.C. Article 2402; Denegre v. Denegre, 30 La.Ann. 275; Succession of Ratcliff, 212 La. 563, 33 So.2d 114; Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679; Peltier v. Begovich, 239 La. 238, 118 So.2d 395; Thompson v. Bradley, La.App. 4 Cir., 142 So.2d 540.
All parties to this suit apparently agree with this principle of law, since they have stipulated that all of the decedent's share of the profits and the existing surplus of the partnership (Items 10-A and 10-B of the inventory) belong to the community.
The law contemplates that where separate funds are mixed or commingled with community funds to the extent that the separate funds are no longer capable of identification, and it is impossible to establish what part of the funds belongs either to the separate estate or to the community, then all of said funds are regarded as belonging to the community. If only a relatively small amount of the deposit is community, however, it will be considered inconsequential and insufficient to constitute commingling, and will not warrant the designation of all such funds as community property. Succession of Land, 212 La. 103, 31 So.2d 609; Abunza v. Olivier, 230 La. 445, 88 So.2d 815; Odom v. Odom, La.App. 2 Cir., 121 So.2d 8; Slater v. Culpepper, 233 La. 1071, 99 So.2d 348; Abraham v. Abraham, 230 La. 78, 87 So.2d 735; Giamanco v. Giamanco, La.App. 3 Cir., 131 So. 2d 159.
The law also is settled that when separate funds and community funds, even though distinguishable and not commingled, are used in making up the consideration paid for property acquired during the existence of the community, the property so purchased becomes community property, although *359 the community may be indebted to the separate estate for the amount of separate funds used in making the purchase. Succession of Hemenway, supra; Reine v. Reine, 170 La. 839, 129 So. 364; Houghton v. Hall, 177 La. 237, 148 So. 37; Abunza v. Olivier, supra.
We have already pointed out that the partnership of F. Hollier & Sons was dissolved upon the death of James Hollier in 1957, and that a new partnership was created sometime after that date. If the new partnership was created by merely transferring the assets of the old one to the new one, without the necessity of decedent paying any additional amounts for his interest in the new entity, such a transaction nevertheless would involve the transfer of the decedent's interest in the "surplus" and "undivided profits" to the new entity, in consideration for which he acquired an interest in the new partnership. His interest in the "surplus" and "undivided profits" admittedly is community property, and it amounts to substantial sums of money. The decedent's interest in the new partnership, therefore, obviously was acquired at least partly with community funds, and thus the interest so acquired belongs to the community estate.
For the reasons herein expressed, we think the evidence supports the decree rendered by the trial court that Item 141 in the inventory, being the interest which the decedent owned in the partnership of F. Hollier & Sons at the time of his death, must be classified as community property.
The evidence shows that while the decedent was living two tracts of land were purchased in the name of "F. Hollier & Sons," one tract being acquired in 1944 and the other during the year 1956. These are the two tracts of land which are included as a part of the description of Item 141 of the inventory.
Since both of these tracts of land purportedly were purchased by the partnership while the decedent was married to the opponent herein, forceful arguments have been presented by counsel for both parties as to whether title to these pieces of real property legally can be vested in this commercial partnership, whether the partnership has an "equitable" interest in the property, whether title to the property is held by the partners "as trustees" for the partnership, or whether the partners become merely co-owners of such property. Counsel for the surviving widow argues that the partnership could not acquire title to the property, that the partners became co-owners of it, and that the decedent's interest belongs to the community since it was acquired during the marriage. Counsel for the administrator, on the other hand, argues that the decedent did not become simply a co-owner of the real property, but that the partnership acquired either a legal or equitable title to it or that it acquired a beneficial interest in such property, and that the decedent's interest in the partnership remained his separate property.
In our opinion these issues relating to the title to these two tracts of land are not before us. They were not raised in the pleadings, and the necessary parties for such a determination are not before the court. It may be, however, that these questions have become moot in view of our conclusion that the decedent's interest in the partnership, regardless of what property or assets may be owned by such partnership, belongs to the community which existed between him and the opponent herein. We express no opinion, therefore, as to the title to the two tracts of land hereinabove mentioned.
For the reasons herein set out the judgment appealed from is affirmed. The costs of this appeal are assessed to the appellant, Philip Hollier, in his capacity as administrator of the Succession of Edese Hollier.
Affirmed.

On Application for Rehearing
En Banc. Rehearing denied.