216 So.2d 842 (1968)
Dea Aucoin HOLLIER, Plaintiff-Appellant,
v.
Dorothy Hollier FONTENOT et al., Defendants-Appellees.
No. 2449.
Court of Appeal of Louisiana, Third Circuit.
December 5, 1968.
Rehearing Denied January 14, 1969.
*843 Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
Guillory, Guillory & Guillory, by Isom J. Guillory, Jr., Eunice, for defendants-appellees.
En Banc.
HOOD, Judge.
This is a petitory action instituted by Mrs. Dea Aucoin Hollier, widow of Edese Hollier, deceased, against the heirs of that decedent. Plaintiff demands judgment recognizing her as the owner of an undivided interest in two tracts of land, with improvements, located in Evangeline Parish, Louisiana. Judgment on the merits was rendered by the trial court rejecting plaintiff's demands, and plaintiff has appealed.
The present suit is a sequel to several other related matters which have been litigated recently in this court and in the Louisiana Supreme Court. See Succession of Hollier, 158 So.2d 351 (La.App.3d Cir. 1963); Succession of Hollier, 247 La. 384, 171 So.2d 656 (1965); Succession of Hollier, 184 So.2d 790 (La.App.3d Cir. 1966, writs denied, 249 La. 203, 186 So.2d 160); and Hollier v. Fontenot, 199 So.2d 600 (La. App.3d Cir. 1967; writs denied, 251 La. 30, 202 So.2d 650).
The pertinent facts, briefly, are that in 1928 a commercial partnership known as F. Hollier & Sons was organized by oral agreement, with Felix Hollier, Rene Hollier and the decedent, Edese Hollier, as the sole partners.
At the time this partnership was formed the decedent, Edese Hollier, was married to Mrs. Mercedes Couvillion Hollier, who died on May 6, 1935, leaving two children as the sole issue of that union. One of these children and the sole surviving heir of the other, now deceased, are the defendants in the instant suit. Edese Hollier married Mrs. Dea Aucoin Hollier, the plaintiff in the instant suit, in June, 1936, and they continued to live together until the death of Edese Hollier, which occurred on September 25, 1961. No children were born of this second marriage.
The succession of Edese Hollier was opened shortly after his death. The inventory filed in that proceeding classified all of the property left by the decedent as being "community property," except one item, designated as "Item 141," which was listed as being "separate property." Item 141 was described in the inventory as follows:
"ITEM 141. A certain undivided interest, say, a 20% interest in and to the partnership of F. Hollier & Sons, which partnership is domiciled at 204 Northwest Railroad Avenue in the Town of Ville Platte, Evangeline Parish, Louisiana. That, among the assets of said partnership is contained, but not limited to, the following real estate, to-wit:
"TRACT A. Two (2) certain lots or parcels of ground located in Evangeline Parish, Louisiana in the Northwest Quarter (N.W. ¼) of Section 27, Township Four (4) South, Range Two (2) East, in the Alcius Fuselier Subdivision No. 1 as per plat made by A. J. Curole, C. E. and Surveyor on November 7, 1955. (Formerly Lot 45-11.7 acres of Plat D to Subdivision of Estate of Ernest E. Ortego dated August 29, 1951.

*844 "Being more particularly described as Lots Nos. 1 and 2 of Block 6 of said Alcius Fuselier Subdivision No. 1.
"Lot No. 1 is described as beginning at a point at the intersection of Phyllis and Etienne Streets, thence 67.5 feet in a Southeasterly direction along Etienne Street; thence South 142 feet; thence West 60 feet; thence North 171.7 feet to point of beginning.
"Lot No. 2 is described as beginning at a point 67.5 feet along Etienne Street from the intersection of Etienne Street and Phyllis Street, thence in a Southeasterly direction 67.5 feet; thence South 112 feet; thence West 60 feet, thence North (along Lot No. 1) a distance of 142 feet to point of beginning.
"Being part of the same property acquired by Alcius Fuselier on November 24, 1951, from Estate of Ernest E. Ortego by deed filed in Conveyance Book B-116 page 75 et seq., records of Evangeline Parish, Louisiana. Being the same property which F. Hollier & Sons acquired from Alcius Fuselier on November 30, 1956 by act recorded as Original Act No. 170960, in Conveyance Book B-140 at page 315 of the records of the Clerk of Court of Evangeline Parish, Louisiana.
TRACT B. A certain tract or parcel of land, together with all buildings and improvements thereon, situated in the Town of Ville Platte, in Evangeline Parish, Louisiana; said tract of land being more particularly described as being Lots 1, 2, 3, 4, 5, and 6 of Block 15 of the W. D. Haas Addition to the Town of Ville Platte in Evangeline Parish, Louisiana; said lots constituting all of Block 15 of said subdivision; said lots being bounded, now or formerly, as follows, to-wit: On the North by Second North Street, on the South by First North Street, on the East by West Railroad Avenue, and on the West by the Estate of Joseph Labas and the property of Mrs. J. W. Landreneau, each of said lots having a frontage of 50 feet on West Railroad Avenue by a depth of 150 feet running between parallel lines; said property being the same property which was acquired by F. Hollier & Sons from the Louisiana Central and Improvements Co. Ltd. on August 31, 1944, by act recorded as Original Act. No. 85279 in Conveyance Book B-70 at page 150 of the records of the Clerk of Court of Evangeline Parish, Louisiana."
The plaintiff in this suit, Mrs. Dea Aucoin Hollier, filed an opposition to that inventory, contending that Item 141 belonged to the community and not to the separate estate of the decedent. The trial court rendered judgment decreeing that Item 141 belonged to the community, and on appeal we affirmed the trial court. (La.App., 158 So.2d 351). The Supreme Court reversed that judgment, however, and remanded the case to the district court for additional evidence (247 La. 384, 171 So.2d 656).
Additional evidence was introduced, as directed, and the trial court then rendered judgment dismissing plaintiff's opposition to the inventory. On appeal a majority of this court affirmed that judgment. (La. App., 184 So.2d 290). The Supreme Court refused plaintiff's application for writs, assigning as reasons for such refusal that "On the facts found by the Court of Appeal, the result is correct." (249 La. 203, 186 So.2d 160).
The effect of the judgment dismissing plaintiff's opposition to the inventory, which judgment has now become final, is to decree that the interest which the decedent, Edese Hollier, owned in the F. Hollier & Sons partnership at the time of his death belonged to his separate estate.
The instant suit was filed shortly after the last mentioned judgment became final. Plaintiff here contends that the two tracts of land, designated as "Tract A" and "Tract B" in Item 141 of the inventory, were never owned by the partnership at all, but that *845 instead, both tracts were owned by the partners individually. She alleges that the interest which the decedent owned in each of said tracts was acquired by him while the community of acquets and gains existed between him and plaintiff, that the deeds by which these interests were acquired do not recite that they were purchased with the decedent's separate funds or for his separate account, and that the decedent's interest in each tract thus belonged to the community. She alleges that the decedent owned a 20 percent interest in Tract A and Tract B at the time of his death, and she demands judgment recognizing her as the owner of one-half of a 20 percent interest in said tracts of land.
The defendants, joined by the administrator of the Succession of Edese Hollier, filed an exception of res judicata in the instant suit, and that exception was maintained by the trial court. On appeal, we reversed the judgment of the district court and remanded the case for trial. (La.App., 199 So.2d 600). Writs were refused by the Supreme Court for the reason that "The judgment complained of is not final. The rights of the applicant, if any, are reserved in the event of an adverse judgment." (251 La. 30, 202 So.2d 650).
An answer was filed by the original defendants and by Philip Hollier, in his capacity as administrator of the Succession of Edese Hollier. The instant suit was then tried on its merits, and judgment was rendered by the trial court rejecting plaintiff's demands. Plaintiff appealed from that judgment, and that appeal is before us at this time.
On this appeal defendants again argue that the judgments heretofore rendered, dismissing plaintiff's opposition to the inventory which was filed in the Succession of Edese Hollier, have the effect of finally determining and decreeing that "Tract A" and "Tract B," which are described in Item 141 of that inventory, belong to the decedent's separate estate. They contend that the exception of res judicata which they filed in this suit, and which we concluded was without merit, should be maintained. They take the position that they can now reurge that exception, since any rights which they may have were reserved to them by the Supreme Court (251 La. 30, 202 So.2d 650).
The same argument was made when the instant suit was before us originally. We concluded at that time that the litigation which took place prior to the filing of the instant suit concerned only the decedent's interest in the partnership, that no issue was raised by pleadings or otherwise and no determination was made as to the ownership of the two tracts of land which are in dispute here, and that the issues presented in the instant suit thus are not res judicata. For the reasons which we assigned at that time (La.App., See 199 So.2d 600), we reaffirm our original judgment that the exception of res judicata filed by defendants is without merit.
The evidence shows that by deed dated August 31, 1944, Louisiana Central Land and Improvement Company, Ltd., sold and conveyed to "F. Hollier & Sons, a commercial copartnership, domiciled and doing business in the Parish of Evangeline, Louisiana, and herein represented by Philip Hollier, one of its partners, and General Manager of said Company," the tract of land which has been designated hereinabove as Tract B. The deed recites that the sale was made for a cash consideration of $4,000.00. It was executed in behalf of the vendor by its vice president, and in behalf of the purchaser by Philip Hollier.
By deed dated November 30, 1956, Alcius Fuselier sold and conveyed to "F. Hollier & Sons, a commercial copartnership domiciled and doing business in the Town of Ville Platte, Evangeline Parish, Louisiana, whose Articles of Partnership are filed and recorded in the office of the Clerk of Court of Evangeline Parish, Louisiana, herein represented by Philip Hollier here present, purchasing and accepting for said F. Hollier & Sons," the tract of land which has been *846 designated hereinabove as Tract A. The deed recites that the sale was made for a cash consideration of $1200.00. It was executed by the vendor, and in behalf of the purchaser by Philip Hollier.
Both of the above mentioned sales were completed during the marriage of Edese Hollier and the plaintiff in this suit, Mrs. Dea Aucoin Hollier. There is no statement in either of these deeds to the effect that an interest in the property was being purchased with the separate funds of Edese Hollier, or that the interest which he acquired was to become a part of his separate estate.
The record establishes, we think, that each tract of land was purchased with partnership funds, that it was used in the conduct of the partnership business, and that it was carried on the books of the partnership as a firm asset.
The initial issue to be determined here is whether the ownership of these two tracts of land became vested in the commercial partnership, or whether the ownership became vested in the partners, in their individual capacities, as joint owners. If it should be decided that the ownership of the land became vested in the partnership, and that it constituted a part of the assets of the partnership at the time of Edese Hollier's death, then the judgment appealed from must be affirmed, because a final determination has been made that the decedent's interest in the partnership belonged to his separate estate. On the other hand, if the conclusion should be reached that the ownership of the property became vested in the partners in their individual capacities, as joint owners, then a further inquiry must be made as to whether the interest acquired by Edese Hollier became a part of the community or a part of his separate estate, and the disposition of plaintiff's demands will depend upon the outcome of that inquiry.
Our law is settled that a commercial partnership cannot own immovable property. If the title to real property is conveyed to or taken in the name of a commercial partnership, the ownership of that property becomes vested not in the partnership, but in the partners in their individual capacities, as joint owners thereof. LSA-C.C. art. 2825; Skillman v. Purnell, 3 La. 494 (1832); Baca v. Ramos, 10 La. 417 (1836); Bernard v. Dufour, 17 La. 596 (1841); Brinson v. Monroe Automobile & Supply Co., 180 La. 1064, 158 So. 558, 96 A.L.R. 1206 (1935); Miller v. Barnes, 135 So.2d 555 (La.App.2d Cir. 1962); Shalett v. Brownell-Kidd Company, 153 So.2d 425 (La.App. 1st Cir. 1963).
In Brinson v. Monroe Automobile & Supply Co., supra, for instance, our Supreme Court said:
"A commercial partnership is exclusively confined to personal property. If a firm buy real property, they become joint owners of, not partners in, it. None of them can alienate it without the consent of the others. And it may be seized, as far as the undivided interest of each partner is concerned, by their individual creditors."
The rule was stated in Miller v. Barnes, supra, as follows:
"The rule is well established that a commercial partnership cannot own immovable property. LSA-C.C. Art. 2825. A commercial partnership is exclusively confined to personal property. The rule is so strictly adhered to that, if the title to real property is taken in the name of a commercial partnership, the ownership is vested not in the partnership but in the partners in their individual capacities as joint owners thereof."
And in Shalett v. Brownell-Kidd Company, supra, our brothers of the First Circuit Court of Appeal said:
"It is well established by the jurisprudence that commercial partnerships are exclusively confined to movable property and if the firm owned immovable property *847 the partners became co-owners of it, in their individual capacity."
All parties concede that the partnership of F. Hollier & Sons was a commercial partnership. The jurisprudence hereinabove cited indicates that the ownership of the two tracts of land which are in dispute here did not become vested in the partnership, but instead the ownership became vested in the partners in their individual capacities, as co-owners of such property.
Defendants argue, however, that even though a commercial partnership cannot own real property per se, nevertheless when immovable property is acquired in the partnership name, with partnership funds, "the partners become trustees or custodians of the property for the benefit of the partnership, and that the property, and the proceeds therefrom in the event of conversion, belong to the partnership." They contend that "even though the partnership, as an entity, cannot hold the legal title, it holds the equitable title and is the owner of the benefices of the particular transaction."
In support of these arguments defendants rely largely on the case of Darden v. Cox, 137 So.2d 898 (La.App. 1st Cir. 1962). The issues presented in that case, however, differ materially from those presented here. In Darden, for instance, the suit was instituted by one partner against the other for a partition of the partnership assets. In the instant suit there is no demand for a partition of the partnership assets, and the partners in F. Hollier & Sons are not even parties to this suit. In the Darden case an "ordinary" partnership was involved, whereas a "commercial" partnership is involved here. This suit involves an interpretation of LSA-C.C. art. 2825, which article was not applicable to the issues present in the cited case. And, in Darden the real property was purchased in the name of one of the partners, individually, whereas the property involved in this suit was purchased in the name of the partnership.
In the Darden case, our brothers of the First Circuit Court of Appeal applied a common law concept of property law, and held that the legal title to the real property involved there became vested in the individual partner, but that the equitable title to the property became vested in the partnership itself. The court stated that "as between the partners, equitable title thereto is vested in the partnership itself," and that, "insofar as the partners are concerned equitable title to property held in the manner shown herein is vested in the partnership to the extent it must be partitioned and divided along with the remaining assets."
It is unnecessary for us to determine here whether we agree or disagree with the conclusions which were reached in the Darden case. The court specifically restricted the rule therein applied to actions "between the partners," and to suits for a partition of partnership assets. The instant suit is not a controversy between partners, and it is not an action for a partition of partnership assets. We find, therefore, that the decision rendered in the Darden case is not applicable to the issues presented here.
Defendants argue further that the provisions of LSA-C.C. art. 2825, if applied as it heretofore has been held to apply, would restrict commercial partnerships to the purchase and sale of movables, and it would prevent such a partnership from providing itself with land and buildings on which to operate a business. They contend that the court, in Darden v. Cox, supra, found a "practical solution" to this problem by holding merely that the partners hold the real property "in trust for the partnership." Their argument is that although the law prohibits a commercial partnership from owning real property, the courts should "provide a method whereby a partnership can acquire the physical facilities necessary to carry on its business."
We can appreciate the inconvenience which some types of commercial partnerships may encounter in obtaining premises *848 on which to conduct a business. But, we think that is a matter which addresses itself to the legislature and not to the courts.
Our conclusion is that the ownership of the two tracts of land which are in dispute here did not become vested in the commercial partnership known as F. Hollier & Sons, but that instead the ownership of each of those tracts became vested in the partners, in their individual capacities, as joint-owners.
The decedent owned more than a 20 percent interest in the partnership when one tract was purchased in 1944, and he owned a 20 percent interest in the partnership at the time the other was purchased in 1956. Plaintiff alleges that the decedent owned a 20 percent interest in both tracts at the time of his death, and she demands only that she be recognized as the owner of one-half of a 20 percent interest in the property. In view of these pleadings we find that the decedent owned a 20 percent interest in each of said tracts of land at the time of his death.
Defendants contend that plaintiff's failure to demand a greater interest in the tract purchased in 1944 constitutes an acknowledgment that the partnership actually owned that tract of land. They point out that the decedent owned more than a 20 percent interest in the partnership in 1944, and that under plaintiff's theory of the law he thus acquired, individually, the ownership of a corresponding interest in Tract B, which was purchased that year. After that date he sold or transferred to others enough of his share in the partnership to reduce his holding to a 20 percent interest. Defendants argue that since plaintiff now claims that the decedent owned only a 20 percent interest in Tract B at the time of his death, she obviously concedes that that tract belonged to the partnership and that the excess over the remaining 20 percent was conveyed by the decedent when he sold a part of his partnership interest after 1944.
We do not consider plaintiff's allegations and demands sufficient to constitute such an acknowledgment. We feel, however, that regardless of the interest in Tract B which she may have been entitled to recover, she should not be recognized as the owner of any greater interest than she has demanded in this suit.
Since interests in both tracts of land were acquired by the decedent, individually, during his marriage to plaintiff, the question arises as to whether the interests so acquired belonged to the community of acquets and gains which existed between them.
In order to preserve the title in the separate estate of the husband, it is necessary to recite two things in the deed: First, that the price is paid with the separate funds of the husband; and, second, that it is the husband's intention to acquire the property for the benefit of his separate estate, or words to that effect. If the deed does not contain these two recitations, then the property is legally presumed to have fallen into the community of acquets and gains, and this presumption is not rebuttable. LSA-C.C. art. 2405; Succession of Bell, 194 La. 274, 193 So. 645 (1940); Thomas v. Thomas, 27 So.2d 758 (La.App. Orl.Cir. 1946, cert. denied); Howard v. Ingle, 180 So. 248 (La.App.2d Cir. 1938); Succession of Chapman, 225 La. 641, 73 So. 2d 789 (1954); Coney v. Coney, 220 La. 473, 56 So.2d 841 (1951); Locantro v. Falco, 144 So.2d 742 (La.App.4th Cir. 1962).
Defendants do not question the above statement of law. And, they have not suggested that the decedent for any reason was relieved of the necessity of including the "double declaration" in each deed in order to preserve the title to the property conveyed by such deed in his separate estate.
In view of the fact that a 20 percent interest in both of the disputed tracts of land was acquired by the decedent, individually, during his marriage to plaintiff, and since neither of the deeds conveying these tracts to him contained the "double declaration" hereinabove described, it must be presumed *849 that the decedent's interest in said tracts fell into the community, and this presumption is irrebuttable. Plaintiff, therefore, as the surviving widow of the decedent, is entitled to be recognized as the owner of an undivided one-half of the decedent's 20 percent interest in both of said tracts of land.
We conclude that the trial judge erred in dismissing plaintiff's suit, that the judgment appealed for must be reversed and that judgment should be rendered in favor of plaintiff granting her the relief which she seeks.
For the reasons herein assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of plaintiff, Mrs. Dea Aucoin Hollier, and against defendants, Mrs. Dorothy Hollier Fontenot, Joseph Drake Hollier, a minor, represented by his mother and natural tutrix, Mrs. Betty Jane Soileau Guillory, and Philip Hollier, in his capacity as Administrator of the Succession of Edese Hollier, recognizing said plaintiff as the owner of an undivided one-half of decedent's 20 percent interest in and to the two tracts of land hereinabove referred to as "Tract A" and "Tract B," located in Evangeline Parish, Louisiana. The costs of this appeal are assessed to defendants-appellees.
Reversed and rendered.
MILLER, J., concurs and assigns written reasons.
TATE, J., dissents and assigns written reasons.
MILLER, Judge (concurring).
The writer joins the opinion of the Court in this case, but believes it noteworthy to observe that this result and the reasoning for this decision is in complete agreement with the original decision by the distinguished trial judge. In his opinion of June 25, 1963, he stated:
"The court has read the cited cases by both parties and concludes that:
"Edese Hollier having purchased this property as a partner in the F. Hollier and Son partnership, a commercial partnership, without declaring that this piece of property was being purchased with his separate funds for his separate estate precludes his heirs at this time to rebut this presumption that the property was purchased for the community then existing between himself and Dea Aucoin. Thomas v. Thomas, La.App., 27 So.2d 758; Succession of Bell, 194 La. 274, 193 So. 645; Howard v. Engel, La.App., 180 So. 248."
His decision was unanimously affirmed by this court (Succession of Hollier, La. App., 158 So.2d 351) then unanimously affirmed by the Louisiana Supreme Court, but on rehearing, unanimously remanded to the District Court for further proceedings. (Succession of Hollier, 247 La. 384, 171 So.2d 656).
As stated in our opinion, La.App., 158 So.2d 351, 359, the "issues relating to the title of these two tracts of land are not before us." Therefore the issue as to the double declaration was not then relevant.
Considering the numerous reported decisions relating to this litigation, and the fact that this decision reverses a recent decision of the trial court, it seems appropriate to the writer to note that the original opinion of the trial court correctly disposed of the issue which is controlling in this case.
TATE, Judge (dissenting).
I respectfully dissent from this reversal of the trial court.
As the concurring opinion correctly points out, back in 1963 the trial court held exactly what the present majority now holds, and we affirmed it unanimously. Succession of Hollier, La.App., 158 So.2d 351 (1963). We were, however, *850 reversed. 247 La. 384, 171 So.2d 656 (1965).
On the remand, as instructed by the Supreme Court mandate, we determined that the decedent's partnership interest was his separate property, finding that the successive acquisitions of the partnership assets resulting from the successive partnerships did not transform the husband's partnership interest owned by his separate estate into an asset of the community. La. App., 184 So.2d 790 (1966). Although some members dissented from this interpretation of the Supreme Court decision followed by this court's majority, that high tribunal denied a writ of review, stating that the majority's result was correct. 249 La. 203, 186 So.2d 160 (1966).
As a result of the original Supreme Court reversal of this court, it is now conclusively determined that the partnership interest was the separate property of the decedent. The high court's opinion itself included the description of this separate asset as being an undivided 20% interest in the partnership, with the assets of the partnership to include the real estate, 171 So.2d 656 at 657, which the widow here seeks (again) to have recognized as belonging to the community.
There is therefore much force to the argument that, although due to the technical difference in the demands, the requisite identity of action required for res judicata may not apply, Hollier v. Fontenot, La.App., 3d Cir., 199 So.2d 600, nevertheless the widow has no cause of action to assert a claim already adjudicated adversely to her (by reason of the principle sometimes loosely referred to in Louisiana decisions as judicial estoppel, Williams v. Marionneaux, 240 La. 713, 124 So.2d 919, discussed by the late Dean McMahon, 22 La.L.Rev. 374-75, 1962).
I prefer, however, to rest my dissent upon the explicit terms of our Civil Code. Although assets acquired with community funds during the marriage belong to the community, Civil Code Article 2402, and although assets in the reciprocal possession of the husband and wife are presumed to be community at the dissolution of the marriage, Article 2405, nevertheless Article 2334 specifically provides that: "* * Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly. * * *"
By the Supreme Court ruling, it has been conclusively determined that the immovable property at issue here was acquired through the husband's separate funds, being actually a transformation into another form of an economic interest in the partnership owned by him prior to his second marriage. The majority does not dispute this. Under Article 2334 of our Civil Code, therefore, the property bought through the partnership funds forming part of his separate estate still remains his separate property, even though acquired during the second marriage.
The matter should end here. The majority, however, imports into the decision the "double declaration" rule. By this jurisprudential doctrine, any immovable property acquired by the husband in his name during the marriage is conclusively presumed to have been acquired for the community unless the husband, at the time of its acquisition, states both that the price is paid with separate funds and also that he intends to make the acquisition for his separate estate.
I respectfully suggest that this rule has no application here.
In the first place, the property was acquired in the name of the partnership. A managing partner signed for it. (The husband was not a signatory to the deed.) No decision has been found where, because of the absence of the double declaration, property acquired with separate funds in the name of a third person (the partnership) or without a deed was decreed to have lost its separate nature. All decisions found applying the rule concerned acquisitions *851 in the name of the husband as a purchaser.
In the second place, it is unrealistic and not practical to require the double declaration, unless there is a written act conveying property to the husband individually. There is no opportunity for him to assert the double declaration in such circumstances. There was no way for him to appear in the present instrument to preserve his separate asset from transformation into a property of the community.
The double declaration rule was judicially created. Its reasons and purpose have been discussed by Daggett, The Community Property System of Louisiana 30 (1945), Huie, Separate Ownership of Specific Property, 26 Tul.L.Rev. 427, 444-62 (1952). The latter writer summarizes the husband's double declaration as being required "in order to have reliable evidence of his intention at the time of purchase", 26 Tul.L.Rev. 446.
It is to be remembered that the husband has the management of the community assets. Civil Code Article 2402. Without such a contemporaneous double declaration, acquisitions in his name could possibly at his will, later, be characterized as separate or community, whichever is advantageous to him. In his (alterable) memory alone might exist the proof of whether he was acting in the acquisition for his separate estate or instead as managing partner of the community.
Whatever the reasons exist which justify the long-settled double declaration rule (and the late great Professor Harriet Daggett questioned them, Daggett, cited above, p. 30), there appears no sound functional reason to extend the rule to apply to any other acquisitions than those by deed in the husband's name, in which he in fact has the opportunity to insert a double declaration.
A double declaration is not sacramental to protect the community from diversion of its assets into property to be belatedly claimed as separate. For instance, a wife is not barred from proving that immovable property acquired in her name was acquired with her paraphernal funds and for her paraphernal estate, despite the absence of a contemporaneous declaration to this effect. Succession of Farley, 205 La. 972, 18 So.2d 586, and many decisions cited therein; Daggett, pp. 34-35; Huie, at 26 Tul.L.Rev. 462-65. Nevertheless, the community is deemed to be adequately protected by the strong presumption in favor of its community characterization, Civil Code Article 2405, with a heavy burden of proof required to show otherwise, Prince v. Hopson, 230 La. 575, 89 So.2d 128.
If property is acquired in the husband's name, so that the double declaration rule does apply (as it does not here, where the property was not acquired by him as a party to the deed), nevertheless the jurisprudence has created four exceptions. By them, even though an "acquisition" is "made" during the marriage, a separate asset retains its separate character when the "acquisition" is simply a readily-traceable transformation from one asset to another.
These exceptions as to the double declaration rule have been classified as obtaining in the case of (1) partition sales, (2) exchanges (an exception we recently recognized in Succession of Sonnier, La. App. 3d Cir., 208 So.2d 562), (3) changes of ownership following incorporation during the marriage of what was formerly a partnership interest which belonged to the husband's separate estate (an exception which the Supreme Court broadened in the instant case to include also a transformation during the marriage of an interest in one partnership into an interest into another partnership), and (4) sale-resale transactions, which are actually security transactions. Huie, cited above, at 26 Tul.L.Rev. 451-57.
To the writer, it seems that even stronger reasons of policy and common sense favor exempting the present transformation from *852 any double declaration requirement. To extend the rule beyond its past scope in order to apply it to the present situation, overlooks the artificial nature of the conclusive presumption judicially created. The interest served by permitting separate assets truly so to retain their separate identity, in accord with the intention of the Civil Code, outweigh the interests of arbitrarily earmarking property at the time of acquisition as separate or community; as the former interests so clearly do also in the four exceptions to the double declaration rule previously mentioned.
I therefore respectfully dissent from this reversal of our trial brother, who faithfully followed the prior decree of the Supreme Court which reversed him (and this court as well) for concluding what the present majority opinion does now (again).

On Application for Rehearing.
En Banc.
PER CURIAM.
Defendants, in their application for rehearing, correctly point out that we failed to dispose of their alternate demands in reconvention for the "proceeds which would be received by the Plaintiff herein resulting from the sale and/or conversion of said property to cash," or for the "original cost of the real estate sued for herein."
We felt that these reconventional demands should not be considered in this petitory action, but we did not mean to preclude defendants from urging those demands in the original succession proceeding, or by other separate and appropriate pleadings.
Although we express no opinion as to the merits of any such claim, we hereby reserve to defendants the right to demand in other appropriate proceedings reimbursement for sums which may have been advanced to the community from the decedent's separate estate, or to demand the proceeds of the sale or conversion of the property, or the original cost or value of such property.
With this clarification of our judgment, the defendants' application for rehearing is denied.
TATE, J., is of the opinion a rehearing should be granted, for the reasons stated in his dissent to the original decision.