### No. 5396.

MRS. ADA PIERCE DENÈGRE VS. MRS. SILVAINE DENÈGRE ET AL., EXECUTORS OF JOHN DENÈGRE.

All property found in the succession of a deceased husband, or wife, and in the possession of the surviving husband, or wife, is presumed by law to be community property, until the contrary be proved.

When separate funds of the husband have been used to benefit and enrich the community, it will constitute a debt of the community in favor of the husband, or his succession, to the amount of such funds. But the evidence must establish with reasonable certainty, that the funds thus used were really the separate property of the husband; merely making that fact probable is not sufficient.

Money received by the executor of a deceased husband, arising from the liquidation of a former commercial firm of which the husband was a partner for several months after his marriage, can not be deducted from the community, until it is shown that such money was not a part of the husband's share of the profits earned by his firm during his marriage.

APPEAL from the Second District Court, parish of Orleans. *Tissot,* J.

W. O. *Denègre* and *E. D. White* for plaintiff and appellant.

W. H. *Hunt* and *Thomas J. Semmes* for defendants.

The opinion of the court was delivered by

EGAN, J. The sole question in this case is what is the extent and value of the community after the payment of its debts. Much of the argument of counsel was addressed to a discussion of the law regulating the community rights of the spouses in Louisiana and free reference has also been made to the laws of Spain and of France with a view to determine the exact nature and extent of the rights of the parties to this litigation. However interesting and instructive such discussion of foreign laws may be, the law of Louisiana is too positive and well settled in regard to the matter under consideration to render such reference necessary in the present case. The community of acquets and gains commences at the moment of marriage with *nothing* and includes at its dissolution presumptively *every thing* found in the succession of the deceased spouse and in the possession of the survivor, *unless it be satisfactorily proved* which of such effects either of the spouses brought into the marriage or which have been given them separately or been inherited by them separately. R. C. C. 2405; Bouligny vs. Justin, 16 An. 209. Any property or effects acquired by both or either otherwise during the marriage fall into the community and constitute part of it without reference to the name in which it is acquired, R. C. C. 2402, and without reference also to the amount brought by the respective spouses into the marriage, even though one of them may have brought nothing. R. C. C. 2406. Separate property is that which either party brings into the marriage or acquires during the marriage by inheritance or donation made to him or her particularly. R. C. C. 2334. If the title to such separate property be satisfactorily proved at the dissolution of the marriage it is retained by or restored to the party owning it or his heirs or succession separately and apart from the community or the property of the other spouse. The effects which compose the community as well as the profits arising from the effects which both husband and wife brought reciprocally in marriage, and which have been administered by the husband or by the husband and wife conjointly, are divided after the payment of the community debts equally between the husband and wife or their heirs upon the dissolution of the marriage. R. C. C. 2406. If the separate property of either husband or wife has been increased or improved during the marriage by the common labor, expenses, or industry of both, the other spouse or his or her heirs shall be entitled to one half the value of the increase or amelioration. R. C. C. 2408. The converse of this proposition is equally true, that if the community has been

enriched by the separate funds of either spouse it is indebted *pro tanto* at the dissolution to the separate estate of the spouse whose funds have so enriched it, and this is as much a debt of the community as if it were due to a third person, and must be first deducted from the mass or paid to the spouse to whom it is due before a partition of the common effects. Like any other debt, its origin, character, and amount must however be satisfactorily shown, otherwise the partition and settlement of the community will take place without reference to such claim in accordance with the principles already announced. The difficulty in the present case seems not to be in relation to *property* found in the succession, in regard to which the presumption of its community character exists, but in regard to separate funds of the husband alleged to have been used to enrich the community and to be therefore due by the community to his separate estate. The discussion at bar as to money having no ear-marks and not being therefore traceable when mixed up with community or succession funds, is foreign to the present case, if indeed it has any practicality in any. *The question is solely one of debt or no debt from the community to the separate estate of the husband.* The sole source of the husband's wealth or revenue at the time of the marriage, and consequently the only source from which he could or did derive any funds alleged to have been used for the benefit of and to enrich the community, was his interest in a commercial firm which continued in existence and to do business for several months after the marriage, when it was dissolved, and the husband entered into a new commercial partnership which continued up to the time of his death, and it seems from the evidence for some months after, it is presumed, though the fact does not appear, owing to a stipulation in the articles of partnership. It appears from the evidence that at the time of the marriage the husband had upward of thirty-two thousand dollars to his credit on the books of his firm, and that he had actually put into it a cash capital of twenty-five thousand dollars. It also appears that he put into the new firm formed subsequent to his marriage a capital of thirty-five thousand dollars, of which only seven thousand dollars is traced to any other source than his interest in the firm of which he was a member at the time of the marriage. A sworn account or statement in the record also shows that various sums of money to a large amount were paid over by his former partner in that firm to him or to his executors since his death. The marriage took place in November, and the husband died a little over twelve months afterward. From these facts and the existence of considerable property and effects in the community at his death we are asked to infer that the community is indebted to the separate estate of the husband in the sum of twenty-eight thousand four hundred and twenty-one dollars and ninety-seven cents, an amount

exceeding the total value of the community after deducting from it. debts due to other persons and law charges by more than $13,000.

We have examined the evidence with care and with the desire to end this litigation, but while it is sufficient to render it probable that the community is in debt to the separate estate of the husband, we are unable to agree with the executors or their counsel that either the fact or the amount of that indebtedness is satisfactorily shown. It is correctly argued by plaintiff's counsel that because the husband had put a certain amount of capital into a commercial firm of which he was a member some years before the marriage, and had a certain amount to his credit upon the books of the firm at the date of the marriage, it by no means follows that he was actually worth that amount or either amount at the marriage. Nor does it follow necessarily that because that firm continued in existence for several months after the marriage in a large commercial city and the husband derived from it on a settlement during the marriage a large amount of money which was put by him into another commercial firm or otherwise paid over to him or his executors that he was therefore worth the amount so received at the time of the marriage and entitled to take it out of the community before partition with the wife of the common funds or property. The short duration of the marriage and the evidence of the existence of such a source from which he might have derived funds which went to enrich the community are circumstances entitled to consideration, and to which we attach the weight of simple probability and nothing more. They would not be sufficient to establish a debt against a stranger, nor, in our opinion, are they sufficient to do so against the community or to rebut the presumption in its favor created by the law. In order to do so it was necessary to show not only that the husband had a certain amount of money to his credit with his firm or co-partners at the date of the marriage, but that if the debts of the partnership had been then paid and the partnership then settled that his individual interest was actually and really worth a certain amount at the time, or that he afterward actually received during the marriage from that source without reference to profits and exclusive of profits made subsequently an amount of money equal to that with which it is sought to charge the community, and that it was used to enrich the community. Any portion received by the executors from that source subsequent to the death of the husband would form no proper charge against the community, and could not be properly deducted from it under the facts of this case, unless it be first shown affirmatively that the sums so received were not the result of profits made subsequent to the marriage by the firm of which the husband was a member. It is too well settled to require the production of authority, and results necessarily from the very nature of partnership,

that no partner can at his option withdraw from the firm with his original capital or any specific sum of money at any time without reference to debts due by the firm or to the sufficiency of the assets of the firm to pay not only him but his co-partners also any amounts which may be due them. Hence it results that he can neither be said to be worth any specific sum until all these facts are first ascertained, nor can he even maintain an action against his co-partners for any specific sum, but only for a settlement and ascertainment through such settlement of the actual amount to which he may be entitled, and upon such settlement it may actually turn out that whatever amount he may have put into the common venture, and in whatever proportion he may be entitled to share in the profits, he may actually realize nothing. His entire capital and interests may be absorbed either through the chances of trade or the mismanagement or unfaithfulness of his partners. And this is especially true of a business conducted in a large commercial city like New Orleans where, as very properly stated by plaintiff's counsel fortunes are often made or lost in a day or in a few months. It is then impossible from the evidence before us to determine how much if any of the separate funds of the husband were used for the benefit of the community, and how much of the funds derived by him subsequent to the marriage from the commercial partnership of which he was a member at the time of the marriage and for several months after were derived from profits made subsequent to the marriage, his share of which if so made, which the law presumes in the absence of proof to the contrary, were of right a part of the community and must be treated and held as such.

In order that no injustice may be done and to give to the parties an opportunity to make fuller and more certain proof both as to facts and amounts—

It is therefore ordered, adjudged, and decreed that the decree heretofore rendered by this court be avoided and annulled; that the judgment appealed from be and it is avoided and set aside, and this case remanded to the court below to be further proceeded in in accordance with the principles of this opinion. It is further ordered that the costs of this appeal be paid by the succession of John Denègre, deceased, and that all other costs await the final determination of the cause.