VIOSCA, Justice.
The controversy in this case is well stated by the able trial judge in his written reasons for judgment, as follows:
“This is a proceeding in the nature of a concursus. Petitioner, Harvey Pel-tier, represented a number of individual oyster men as their attorney in certain claims which the oyster men urged against a number of oil companies, alleging damages by the oil companies to oyster beds owned and operated by his clients. Suits were filed in the District Courts of the State of Louisiana and were thereafter removed by the oil companies to the United States District Court for the Eastern District of Louisiana. These claims were all compromised in a lump sum settlement, and all of the clients have been paid except the several who are respondents here, who could not be paid because of a disagreement or conflict concerning their interests. The petitioner has computed the amount of the compromise in each of these claims, and after deducting his fee has deposited the balance in the registry of this Court. These facts stand uncontradicted, and it is necessary for this Court to determine the ownership of the money on deposit by the various claimants.
“There are two basic claims before the Court. The first concerns the claim of Mrs. Viola Dewey, Divorced Wife of Jack Begovich, Sr., against the claims of Jack Begovich and Jack Beg-ovich, Jr. The second concerns the claim of Mrs. Anna Duet, Divorced Wife of Edward F. Calíais, as against the claims of Edward F. Calíais, Eunice J. Vinet and Hypolite Eymard.”
As there is no connection between the dispute in the Begovich case and the dispute in the Calíais case, we shall consider them separately, as did the district judge.
Begovich Claims
These claims involve the proceeds of the settlements in the following civil actions:
C.A. 1869 — Jack Begovich and Jack Begovich, Jr., v. The Texas Company et al......$ 410.30
C.A. 1873 — Jack Begovich and Jack Begovich, Jr., v. The Texas Company et al......$ 455.06
In their answer to the concursus proceeding Jack Begovich, Sr., and Jack Begovich, Jr., claim that they were partners in the proportions of an undivided one-half interest each in the oyster operations and that the above amounts should be divided equally between them. In her answer, Mrs. Viola Dewey, divorced wife of Jack Bego-vich, Sr., contends that the share of Jack Begovich, Sr., formed part of the community which previously existed between herself and her divorced husband and that since no community settlement was made she is entitled to one-half of the interest of Jack Begovich, Sr. She further denies that a partnership existed between Jack Bego-vich, Sir., and Jack Begovich, Jr., and alleges that for the specific purpose of defrauding her of her rights and interest in the community, her husband, without any consideration, transferred interests in which she was a half owner to his son Jack Bego-vich, Jr.
*398 Jack Begovich, Sr., died on April 6, 1957 and his heirs were made parties to the suit. Thereafter, Jack Begovich, Jr., and the heirs of Jack Begovich, Sr., filed an exception of no right or cause of action alleging that the damages to the oyster beds were sustained partly before the marriage and partly while Jack Begovich, Sr., and his wife were living separate and apart due to fault on her part, which fault was established in the divorce proceedings. Accordingly, it is alleged the amounts recovered in these suits were the separate property of the husband. The district judge referred the exception to the merits, but after trial held it to be well founded. He dismissed the claims of Mrs. Viola Dewey Begovich in their entirety and rendered judgment on the merits in favor of Jack Begovich, Jr., and the heirs of Jack Begovich, Sr., awarding the sum of $432.68 of the amount deposited to Jack Begovich, Jr., and $432.68 of said amount to the heirs of Jack Bego-vich, Sr. From this judgment Mrs. Viola Dewey Begovich has prosecuted this appeal.
The first point to be disposed of is the claim of Mrs. Viola Dewey Begovich that Jack Begovich, Jr. was not a partner of her former husband Jack Begovich, Sr. The district judge after reviewing the evidence said “the evidence convinces the court that a partnership did exist between Jack Begovich, Sr., and Jack Begovich, Jr. for the working of the oyster beds alleged to have been damaged”. After reviewing the record we agree with the district judge. Jack Begovich, Jr. testified that this partnership for the cultivation of oysters on a fifty-fifty basis began in 1940. This is confirmed by Dominic Begovich, Alex J. San-dras and Edward F. Calíais. One of the leases is in the name of Jack Begovich, Jr., and three of them in the name of Jack Begovich, Sr., and the evidence shows that both worked together on all of the leased property. The only evidence to the contrary is the testimony of Viola Dewey Begovich who first stated that when she was at the camp Jack Begovich, Jr. was not on speaking terms with his father, but she later testified that Jack Begovich, Jr. worked for Jack Begovich, Sr. on a salary of $250 per month. The suits against the oil companies for damages were brought by Jack Begovich, Sr., and Jack Begovich, Jr., as a partnership, and the money recovered from the compromise was for the account of both.
Viola Dewey Begovich has failed to prove her allegations of fraud. It is the settled jurisprudence of this Court that proof of fraud must be by more than a preponderance of evidence. Sanders v. Sanders, 222 La. 233, 62 So.2d 284. We therefore agree with the district judge that one-half of the amount of $865.36 or $432.-68 must be awarded to Jack Begovich, Jr.
In order to determine the distribution of the other half or $432.68 belonging to Jack Begovich, Sr., it is necessary to determine what, if any part of that amount fell into the community of acquets and gains which existed between Jack Begovich, Sr., and Viola Dewey Begovich.
Viola Dewey and Jack Begovich, Sr., were married on March 12, 1943. They separated on January 17, 1946. Jack Bego-vich, Sr. filed suit for divorce against her on March 9, 1948 alleging a continuous separation for two years. In her answer Mrs. Viola Dewey Begovich admitted the separation, asking for alimony and attorney’s fees, for an inventory and for a reservation of her rights for a partition of community property. In her answer she further alleged that among the community assets were “oyster beds located in Jefferson Parish”. On December 20, 1948 judgment of divorce was rendered in favor of Jack Begovich, Sr., and the claim for maintenance and attorney’s fees was rejected on the ground that the evidence showed the wife to be at fault. The preamble of the judgment contains the statement that “the evidence fails to disclose any community property existed between the plaintiff and the defendant herein”, and there was no reservation in the judgment of the right for a partition of .community property.
*399 There are four oyster beds involved in Civil Actions Nos. 1869 and 1873, two in the Parish of Jefferson and two in the Parish of Plaquemines. All of the leases were for terms of fifteen years and were obtained before the marriage of Jack Bego-vich, Sr., and Viola Dewey. One of these leases in Jefferson Parish was in the name of Jack Begovich, Jr., and the other three were in the name of Jack Begovich, Sr. These leases which were given by the Department of Wild Life and Fisheries for a rental of $1 per year per acre covered only the use of the beds. According to the evidence it was necessary that the lessees plant and cultivate their oysters and a period of six months to two years was required for development before they could be gathered and sold. This operation required labor and expense.
The suits for damages, out of which the settlements grew were based upon allegations that pollution of waters surrounding the oyster beds caused by the oil companies resulted in the loss of oysters, injury to beds and additional expense in connection with the planting, cultivation and selling of oysters and cleaning beds. In Civil Action No. 1869 arising out of the Jefferson Parish leases, the amounts claimed were: For the season 1941-1942, $5,434; for the season 1942-1943, $8,750; and for the season 1946-1947, $75,620 or a total of $89,-804. Since the claims for the seasons 1941— 1942 and 1942-1943 covered the period before the marriage, the district judge was correct in his ruling that Begovich’s interest in the amount recovered by compromise for those years was his separate property. 84% of the total claim, however, was for the oyster season 1946-1947. This was during the existence of the marriage. The suit for damages was filed on April 24, 1947, while the parties were living apart but before the divorce suit was instituted.
The district judge held that the amount recovered from the settlement for that period was the separate property of Jack Begovich, Sr., for two reasons. First, he held that since the husband and wife were living separate and apart by reason of fault on her part sufficient for divorce or separation, her fault having been established in the divorce action, this action for damages resulting from offenses and quasi offenses suffered by him were his separate property under LSA-Civil Code Article 2334 as amended; and, second, he held that since the divorce proceedings failed to show that there was any community property and the judgment failed to reserve the right of partition, that finding was res judicata.
LSA-Civil Code Article 2334 provides in part:
“Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.”
“Actions for damages resulting from offenses and quasi offenses suffered by the husband” do not include actions for damages resulting from injury or damage to community property or loss of community income. Income from the separate property of the husband, whether living with his wife or not falls into the community. Likewise earnings of the husband, whether living with his wife or not fall into the community.
The oyster beds were the property of the State of Louisiana, not the separate property of the husband. While the leases were executed before the marriage, their operation after the marriage was for the benefit of the community and any gain or loss in income or earnings was a community asset or liability. Any recovery of damages arising out of the loss of - community income or assets is for the benefit of the community, and is not a .recovery of damages “suffered by the husband” within the meaning of LSA-Civil Code Article 2334.
Nor do we believe that the judgment of divorce, which failed to reserve *400 the wife’s right to a partition, bars the wife from claiming a community interest in the proceeds of the settlements on deposit in this cause. LSA-Civil Code Article 2286 provides:
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.”
There was no demand in the divorce suit for a partition of the community. She asked merely that her right to a partition be reserved. There was no demand for a portion of the settlements in these cases, which in fact were not settled until after the divorce judgment. That judgment is therefore not .res judicata. Lloveras v. Reichert, 197 La. 49, 200 So. 817; Thomas v. Thomas, La.App., 27 So.2d 758.
We believe, therefore, that Mrs. Viola Dewey Begovich is entitled to one-half of the amount of the settlements that is attributable to Jack Begovich, Sr.’s interest for the season 1946-1947. The total amount received from the settlement of the Jefferson case was $410.30. One-half of this amount or $205.15 belongs to Jack Bego-vich, Jr. 84% of the remaining $205.15 or $172.36 falls into the community which existed between Viola Dewey Begovich and Jack Begovich, Sr. One-half of this amount or $86.16 therefore belongs to Viola Dewey Begovich.
From the Plaquemines Parish litigation the amount received from the compromise was $455.06. The Plaquemines Parish record is not before us. During the trial that record was offered in evidence and the district judge gave counsel ten days within which to file it. In his written opinion the district judge says “the claim of Jack Bego-vich Sr., and his divorced wife is somewhat confused, because the record in the matter bearing No. 2150 of the Twenty-fifth Judicial District Court for the Parish of Plaque-mines (C.A.1869) has not been filed in the record as requested by the court and, therefore, there is only verbal testimony in relation thereto”. According to this verbal testimony the periods involved are the same for Plaquemines as for Jefferson Parish, and in the absence of the record we must conclude from this testimony that the percentages of recovery for the seasons 1941-1942, 1942-1943 and 1946-1947 are the same as in the Jefferson Parish case.
On that basis, Jack Begovich, Jr., is entitled to $277.53; and 84% of $277.53 or $191.12 fell into the community existing between Viola Dewey Begovich and Jack Begovich, Sr. One-half of this amount or $95.66 therefore belongs to Viola Dewey Begovich, and the other half or $95.66 belongs to the heirs of Jack Begovich, Sr.
Viola Dewey Begovich is therefore entitled to a total of $181.72 as her portion of the community. The other half of the community, together with the separate property, would go to the heirs of Jack Begovich, Sr. His half of the community amounted to $181.72. Adding to this the 16% attributable to the seasons 1941-1942, 1942-1943, would make a total of $250.96 belonging to the heirs of Jack Begovich, Sr. The sum on deposit in the Begovich matter which amounts to $865.36 should therefore be divided as follows: $432.68 to Jack Begovich, Jr., $250.96 to the heirs of Jack Begovich, Sr., and $181.72 to Viola Dewey Begovich.
Calíais Claims.
This dispute involves the proceeds of the settlements of the following Civil Actions :
C.A. 1898 — Edward F. Callais and Eunice J. Vinet v. The Texas Company et al. .... $3887.40
C.A. 1854 — Hypolite Eymard v. The Texas Company et al. .......$ 643.45
*401 Mrs. Anna Duet, divorced wife of Edward F. Calíais, claims 'that the proceeds of these settlements constituted community property between her and her divorced husband Edward F. Calíais and that she acquired the total interest of Edward F. Cal-íais by virtue of a public adjudication in partition proceedings between them under Docket No. 281-288 of the Civil District Court for the Parish of Orleans. Anna Duet and Edward F. Calíais were married on February 13, 1926. The oyster leases were acquired subsequent to the marriage. The parties were divorced by judgment of the Civil District Court of the Parish of Orleans and in subsequent partition proceedings Anna Duet, divorced wife of Edward F. Calíais, purchased at public auction for $150 cash on July 29, 1948 “all of the undivided right, title and interest of Edward F. Calíais in and to the suit” entitled Edward F. Callais and Eunice J. Vinet vs. The Texas Company et al. No. 19822 of the Docket of the 24th Judicial District Court. This is the same case as Civil Action 1898 from the settlement of which the sum of $3,887.40 was deposited in the registry of the court. Calíais concedes that his wife purchased his interest which he says amounts to 5%. Eunice J. Vinet in his answer claims the other 95% of the amount. Mrs. Anna Duet Calíais claims the whole amount.
The sum of $643.45 deposited in Civil Action 1954 is claimed by Hypolite Eymard and Anna Duet Calíais. Calíais disclaimed any interest in this sum and alleged that he subleased the oyster beds involved in this suit to Eymard, and that Eymard is entitled to the entire amount.
The district judge found that Edward F. Calíais was entitled to only a 5% interest in Civil Action 1898 and that his divorced wife Anna Duet Calíais, who bought his interest, was entitled to that amount only. He found that Eunice J. Vinet was entitled to the remaining 95%. He likewise found that the entire amount in Civil Action No. 1954 belonged to Hypolite Eymard. He accordingly rendered judgment dismissing Anna Duet Calíais’ claim to any of this amount. From this judgment Anna Duet Calíais has prosecuted this appeal.
Taking up first the Callais-Vinet matter, the record shows that Calíais did not bed oysters between the years 1940-1947 but was a “middleman” who bought oysters from fishermen and sold them to dealers. He acquired leases from time to time from the Department of Wild Life and Fisheries, wherever fishermen surrendered them. In turn he would sublease these bedding grounds to fishermen who would agree ta pay the annual rental to the Wild Life and Fisheries Department which amounted to $1 per acre per year and would in turn give Calíais preference in the purchase of the oysters produced on these bedding grounds. Calíais sublet bedding grounds to Vinet on November 1, 1942 at a rental of $450 per year and confirmed this by notarial act on June 5, 1947 shortly before the suit for damages against the oil companies was filed. There is in evidence a partnership agreement between Vinet and Calíais dated June 1, 1946 for the planting, ■ cultivation, harvesting and selling of oysters. Under the agreement Vinet was to use the bedding grounds leased by Calíais from the Wild Life and Fisheries Department and subleased to Vinet at a rental of $450 per year; and in consideration of advice furnished and to be furnished by Calíais to Vinet and the low yearly rental, Calíais was to receive 5% interest in the dollar value of the total amount of oysters grown and produced to be computed at the market price. Vinet in consideration of his direct supervision and the use of his equipment and labor was to get 95% computed in the same way. This agreement was confirmed by notarial act in 1947 and later registered in the Conveyance Office of Jefferson Parish. Civil Action No. 1898, covering damages alleged to have been sustained in the season 1946-1947, was brought in the names of Calíais and Vinet who ad-leged that they were partners. It is Calíais’ interest in this suit that his divorced wife Anna Duet Calíais purchased at public auction.
*402 The parol evidence offered confirmed this partnership agreement and Mrs. Anna Duet Calíais did not take the witness stand or offer any evidence to the contrary. Instead she endeavored to offer evidence to show that she and her husband were having marital differences at the time.. The purpose of the evidence was to show that the partnership agreement was a simulation. The court excluded this evidence on the ground that Anna Duet Calíais had not alleged that the partnership was a fraudulent agreement or that there was a simulated transfer in fraud of her rights. Counsel for Anna Duet Calíais complains of this ruling. We agree with the district judge that where a wife claims her husband, while head and master of the community, has made transfers of community property in fraud ■ of her rights as prohibited by LSA-Civil Code Article 2404 she must allege specifically the fraud complained of. Probst v. Di Giovanni, 232 La. 811, 95 So.2d 321; Cunningham v. Penn Mut. Life Ins. Co., 152 La. 1023, 95 So. 110; Hartsfield v. Green, La.App., 62 So.2d 180. The district judge was correct in excluding the evidence and was likewise correct in holding that Mrs. Anna Duet Calíais was entitled to 5% and Eunice Vinet 95% of the $3,887.40 deposited from the recovery in Civil Action 1898.
With respect to the Hypolite Eymard matter, the record shows that Calíais secured a lease from the Wild Life and Fisheries Department in 1941 and that he sublet the bedding ground covered by this lease to Eymard on November 1, 1942 for a period of five years, the sub-lessee to pay all rentals due or to become due to the Wild Life and Fisheries Department and because of the low rental to give to Calíais “first preference to purchase all oysters produced on said bedding ground at the current market price.” This sublease was confirmed by notarial act in June of 1947 shortly before Civil Action No. 1954 was brought. This action was brought in the name of Hypolite Eymard, sub-lessee and Edward F. Calíais, sub-lessor. This was done, according to counsel, to avoid the possibility of exceptions by the oil companies. Both Eymard and Calíais testified that Eymard alone worked on the leased property, that Eymard planted all the oysters and furnished all the money, and that Calíais contributed neither money nor labor. Calíais as the “middleman” was given preference in the purchase of oysters from the subleased property. Here again the district judge excluded evidence of marital differences between Anna Duet Calíais and Edward F. Calíais for the reason that there was no allegation of fraud or simulation.
For the reasons previously stated we believe the district judge was correct in excluding this evidence and that Eymard is entitled to the full amount of $643.45 deposited in connection with Civil Action No. 1954.
For the reasons assigned the judgments of the district court are affirmed insofar as they award to Jack Begovich J,r., the sum of $432.68; Mrs. Anna Duet, divorced wife of Edward F. Calíais the sum of $194.37, Eunice J. Vinet the sum of $3,693, and Hypolite Eymard the sum of $643.45.
The judgments are amended so as to reduce the amount awarded to Jack Begovich Jr., Dominic J. Begovich, John Robert Beg-ovich, Evela Begovich, wife of Ariald Lod-rigues, and Gloria Begovich, wife of Harrison Schouest from $432.68 to $250.96.
The judgments are reversed insofar as they maintain the exception of no cause of action and dismiss the claims of Mrs. Viola Dewey, divorced wife of Jack Begovich; and it is now ordered, adjudged and decreed that the exception of no cause or right of action be overruled and that there be judgment in favor of respondent, Mrs. Viola Dewey, divorced wife of Jack Bego-vich, Sr., recognizing her to be the owner of and entitled to the sum of $181.72 being held on deposit in these proceedings in the Registry of the Twenty-fourth Judicial District Court, for the Parish of Jefferson.
*403 It is further ordered that all costs be paid out of the amount on deposit in the registry of said court and be prorated among all of the respondents in proportion to the amounts to he received by them.
HAMITER, J., did not participate.