DOMENGEAUX, Judge.
During the time pertinent to this cause, plaintiff herein, J. A. Buckley, was the lessee of a certain parcel of pasture land located in Calcasieu Parish, Louisiana. Defendant, Nat Harrison & Associates, Inc. was a general contractor engaged in the construction of power lines for Gulf States Utilities Company across a segment of plaintiff’s land and was insured by Travelers Insurance Company, the second defendant herein.
The property leased by plaintiff was bounded on the north by the Intracoastal Canal, on the south by a deep, boggy marsh, and on the east, west and a portion of the south, by four strand barbed wire fences. It was stated to be one-half mile square. Plaintiff began placing cattle on the land in the early spring of 1967 and according to the figures of the trial judge, which we accept, he eventually placed a total of 84 cows, three bulls, two heifers, two steers, and 59 to 61 calves thereon. Approximately in June of that year two gaps were constructed in the fences, one on the east and the other on the west, for the use and benefit of defendant and Gulf States Utilities Company, presumably by agents of the latter. Defendant was engaged in active construction in the general area of plaintiff’s lease from around April through October of 1967. Plaintiff alleged that during that time defendant was negligent in frequently neglecting to close the aforementioned gaps, after opening them, and thus permitting plaintiff’s cattle to escape and become lost. Claiming the loss of 103 head of cattle and related expenses incurred in searching for them, as well as damages for injury to the grass on his land resulting from defendant’s dragging of heavy equipment thereon, plaintiff filed suit against the defendant and its insurer. Defendants come into this court seeking reversal or modification of a trial court judgment awarding plaintiff the sum of $13,620.00 representing $13,270.00 for the loss of his cattle, $300.00 for expenses incurred in searching for them, and $50.00 for damage to his grazing grass. Defendants do not dispute the total number of cattle lost or their value, but assign several other specifications of error in the trial court.
In their first specification of error, defendants complain that the trial judge erred in permitting plaintiff to enlarge the pleadings by showing that his cattle escaped through gaps in the fence when his petition alleges negligence on the part of Nat Harrison & Associates, Inc. (hereinafter called defendant) in causing * * * “a portion or portions of a fence forming the enclosure for the said cattle to *524 be torn down, allowing a number of petitioner’s cattle to escape.” The law and jurisprudence are clearly to the effect that harsh rules of procedure are not favored and that pleadings should be liberally construed so as to serve the ends of justice rather than technical niceties. La.Code of Civil Procedure, Articles 865, 5051; Hollier v. Fontenot, La.App., 199 So.2d 600, and cases cited therein. There is evidence in the record that defendant took plaintiff’s deposition prior to the trial. Further we note that two photographs put in evidence by defendant depict the gaps in the fence. Under these circumstances defendant cannot justifiably allege that it was taken by surprise when plaintiff specified that the cattle escaped through the gaps, and there is no merit in this specification of error.
Secondly, defendants allege that plaintiff failed to sustain his burden of proof. The trial judge found as facts that the cattle escaped through the gap in the eastern fence and that it became possible for them to do so because defendant’s employees left the gaps open. It is too well settled to require citation that unless the trial judge committed manifest error in reaching his conclusions of fact we may not overturn those conclusions on appeal, and bearing this in mind we turn now to an examination of the evidence.
The testimony was uncontradicted that the cattle would not have swam the intra-coastal canal to the north unless driven into it under great pressure. Although there was some testimony to the contrary on defendant’s part, the preponderance of the evidence is to the effect that the marsh on the southern end of the property was so boggy as to preclude the escape of cattle in that direction. Further the evidence shows that the eastern fence constructed by plaintiff extended for approximately two-thirds of the way across the southern end of the pasture, through the marsh. Even assuming, therefore, that the cattle could have escaped toward the south they could only have done so by rounding the southern end of the western fence and traveling in a westerly direction. This would put them in an adjoining fenced pasture in which, according to all of the evidence, it would have required no great effort to locate them. There was no indication that the cattle had burst through the fence, although there was some testimony that had they done so, they would have left evidence of their passage such as pulled staples, hair on the barbed wire, etc. On the other hand, there was a great deal of testimony on the part of numerous witnesses for plaintiff, that the gaps had frequently been found open, that on one occasion, when the gap on the eastern side was found closed, there was abundant evidence, such as tracks and manure, under the gap, to indicate that cattle had passed through it, and that on another such occasion a number of plaintiff’s cattle were found huddled on the eastern side of the same gap apparently seeking re-entry into their proper pasture. Plaintiff and his witnesses also testified that to the east of plaintiff’s land was a vast area containing thousands of cattle belonging to others, and that this is the only place where plaintiff’s cattle could have become lost.
Defendant’s agents testified that the instructions to their employees were to leave the gaps as they found them, i.e., if they came upon an open gap they were to leave it open and if they came upon a closed gap they were to close it after their passage. They also made references to the possibility of other persons such as their subcontractors, inspectors, hunters, etc., using the gaps. However, the defendant’s construction superintendent testified that the subcontractors had finished their work on plaintiff’s land some two weeks before he obtained knowledge of the alleged cattle loss; only one of the inspectors had a vehicle and he didn’t appear on the scene until the end of the year (after the cattle had escaped); and the time involved was summer, thus minimizing the chance that hunters were present.
*525 We see, then, that the gaps were constructed for the use and benefit of defendant, and defendant’s employees were the only ones whom it was proved continuously used the gaps throughout the time in question. Further the preponderance of the evidence leads to the conclusion that the cattle escaped through the eastern gap and were lost in the vast acreage they thus entered. Under these circumstances we cannot say that the trial judge erred in holding defendants liable for the loss of the cattle.
Defendant next specifies that the trial court erred in allowing plaintiff the sum of $300.00 to compensate him for his expenses in seeking the lost cattle. Plaintiff testified that although he did not pay the men who helped him search for the cattle in money, he paid them for their services in goods. Thus he stated that he gave these men a horse, a jeep automobile, an aluminum boat, several sacks of feed, and a large amount of hay. In addition he incurred the expenses of feeding them while they were working for him, and of fuel for vehicles used in searching for the cattle. This testimony was uncontradicted, and, in part, corroborated by at least one witness. The trial judge was therefore justified in making this award, and the amount of $300.00 was certainly not excessive in view of the unrefuted evidence.
Finally defendant complains that plaintiff failed to mitigate his damages. Defendant points out that plaintiff was paying an individual living on the pasture adjoining on the west to look after his cattle and argues that plaintiff should have ordered this man to check the gaps each evening. There is no showing, however, that the cattle escaped only in the evening, and we see no reason why they could not have left their pasture during the day. It seems to us that the demanded gesture would have been, if not futile, nearly so. Plaintiff specified three different occasions on which he noticed a loss of cattle. After each of these losses he complained vehemently to defendant’s agents and demanded that they take measures to prevent further escapes of cattle. He took steps to locate the strayed animals and enlisted the aid of others in his search. We are of the opinion that by these actions he satisfied his obligation to mitigate his damages.
Finding no manifest error in the holdings of the trial court we are bound to affirm its judgment. Therefore, and for the other foregoing reasons, the judgment appealed from is affirmed at appellants’ cost.
Affirmed.