410 So.2d 793 (1982)
Mattie Rose Ferguson DOWNS, Plaintiff and Defendant-Appellant,
v.
Malcolm C. DOWNS, Defendant and Plaintiff-Appellee.
No. 8582.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Rehearings Denied March 23, 1982.
*795 Davis & Saybe, Michael H. Davis, Alexandria, for plaintiff and defendant-appellant.
Kennedy & Yeager, Ralph W. Kennedy, Alexandria, for defendant and plaintiff-appellee.
Before CULPEPPER, FORET and CUTRER, JJ.
FORET, Judge.
Malcolm C. Downs (plaintiff) brought this action to partition certain property alleged to have fallen into the former community of acquets and gains that had existed between him and the defendant, Mattie Rose Ferguson Downs. The trial court appointed W. T. Armitage, a notary public of Rapides Parish, to make an inventory of the property. Armitage made the inventory as ordered and filed his proces verbal with the court. Both parties filed numerous motions to traverse the proces verbal.
Trial of plaintiff's action, and the motions to traverse, resulted in a judgment by the trial court decreeing a number of items of movable property to be defendant's separate property. The trial court further decreed that a number of items of immovable property were community property and ordered that these immovables, together with certain movable property, be partitioned by licitation with the sale to be conducted at public auction by the Sheriff of Rapides Parish. Finally, judgment was rendered in favor of defendant granting her a credit of $2,217.60, and in favor of plaintiff granting him a credit of $18,737.58 against the former community. The judgment is final as to plaintiff as he has failed to perfect an appeal.
Defendant was granted this suspensive appeal from the trial court's judgment and raises the following issues:
(1) Whether the capital account of plaintiff in the Downs Furniture Company is a community asset;
(2) Whether plaintiff's partnership interest in Downs Furniture Company is community property;
(3) Whether the increase in value of plaintiff's partnership interest in the Downs Furniture Company resulted from the reinvestment of community funds into the business and/or community labor performed for the business;
(4) Whether the community is indebted to defendant because of defendant's alleged use of her separate funds to improve community property or for other community purposes;
(5) Whether plaintiff's partnership interest in Downs Investment Company is community property.

FACTS
Plaintiff and defendant were married on December 25, 1953, and established their domicile in Rapides Parish. Defendant obtained a judgment of separation on December 14, 1977, and the parties were subsequently divorced on November 28, 1979.
Plaintiff instituted this action on May 11, 1978, reciting the above mentioned facts, and alleging that he and defendant were owners in common of certain property that had fallen into the community of acquets and gains which no longer existed between them. Plaintiff further alleged that the parties were unable to agree upon a non-judicial partition of the property and that he was entitled to a judicial partition thereof.
Defendant answered plaintiff's original petition, alleging that the household goods, enumerated in the detailed descriptive list attached to the petition, were, for the most part, defendant's separate property. Defendant also alleged that the detailed descriptive list failed to include certain items of community property, and that she was entitled to reimbursement from the community for her separate funds alleged to have been expended to improve community property or for other community purposes.

NATURE OF PLAINTIFF'S CAPITAL ACCOUNT
Defendant contends that plaintiff's capital account maintained for him by the *796 Downs Furniture Company is community property because it consists solely of plaintiff's share of the partnership's profits placed therein. She argues that plaintiff's share of the partnership's profits became community property when they were placed in the account.
William Roberts, a C.P.A. and an attorney, was accepted by the court as an expert in accounting. He testified that he had provided his services as a C.P.A. to the Downs Furniture Company since its inception. He explained the nature of plaintiff's capital account as follows:
"... that's composed of cash, accounts receivable, inventory, furniture and fixtures, vehicles, cash surrender value of life insurance, meter deposits ... total less accounts payable, taxes payable, trade notes payable, notes payable ... net capital."
Roberts explained that a separate capital account was maintained for each partner. That partner's share of the profits generated by the partnership would be credited to his capital account each year (losses were deducted therefrom). A partner was allowed to withdraw funds from the partnership as long as funds were available and the withdrawals did not exceed the amount stated in his capital account. The withdrawal would be accomplished by writing a check on the partnership checking account made out to the partner making the withdrawal and by decreasing the amount stated in his capital account accordingly. Roberts further explained that these capital accounts were not actual cash accounts, but were simply maintained as a method of indicating the amount that each partner had invested in the business.
The evidence shows that a partner's capital account is nothing more than a reflection of the net capital invested by that partner in the business, together with his share of the partnership's profits reinvested by him. The accounts are not separate and distinct entities that can be characterized as "property". They exist only on paper as a means of showing the value of each partner's interest in the partnership. We find no merit in defendant's contention that plaintiff's capital account is community property.

NATURE OF PLAINTIFF'S PARTNERSHIP INTEREST IN DOWNS FURNITURE CO.
Defendant concedes that plaintiff's partnership interest in the Downs Furniture Company was originally his separate property, having been acquired before the parties were married. However, she contends that the nature of that interest was changed by certain events such that it is now community property.
Her position is that plaintiff formed new partnerships, with his brothers, in 1968 and 1972 and that plaintiff used community property to finance his interest in these new partnerships. However, the trial court found that the events consisted of nothing more than a transformation of plaintiff's interest in one partnership to an identical interest in another partnership. The trial court, in support of its findings, cited the jurisprudence holding that the mere change of separate property from one form to another during the existence of the community does not change the nature of that property from separate to community[1].
The written agreement signed by the partners in 1968 indicates that they were merely setting forth in writing the terms of a verbal contract of partnership entered into by them on April 1, 1964. The same is true with respect to the written agreement executed in 1972, although that agreement changed the percentage share of each partner in the profits and losses of the partnership. Thus, the crucial question is what was the nature of the property (either community or separate) used by plaintiff to finance his interest in the partnership formed on April 1, 1964.
The evidence indicates that on April 1, 1964, plaintiff's capital account, maintained *797 in the old partnership, reflected a value of $82,930.99. The financial records of that partnership, together with the income tax returns filed by the parties, show that $94,338.10 had been credited to plaintiff's capital account as his share of the profits from the date the parties were married until the new partnership was formed. For the reasons expressed in the next section of this opinion, we find that these funds were community property. However, for that same period of time, plaintiff had withdrawn $97,179.25 from the old partnership which he used for community purposes. Thus, at the time the new partnership was formed, the value reflected by plaintiff's capital account was attributable only to plaintiff's original investment in the old partnership and additional capital infused by him into that partnership.
We find that there was no change made in the nature of plaintiff's partnership interest by the formation of a new partnership on April 1, 1964. Plaintiff's interest in the old partnership was his separate property and it remained his separate property when he used it to capitalize his interest in the new partnership.

INCREASE IN VALUE OF PLAINTIFF'S PARTNERSHIP INTEREST
Defendant contends that the value of plaintiff's partnership interest (separate property) in the Downs Furniture Company increased by over $65,000.00 during the period of time the parties were married and that she is entitled to one-half of that increase in value under the provisions of LSA-C.C. Article 2408[2].
LSA-C.C. Article 2408 provides:
"Art. 2408. Division of increase or improvements of separate property
Art. 2408. When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
Hence, it is perceived that, if either husband or wife substantially contribute to the amelioration of the separate property of one of them during the marriage by his or her labor or industry, the spouse who does not own the separate property is entitled to the reward of one-half the value of the increase, and it is immaterial whether the enhancement is attributable to his or her personal effort. The important circumstance is that the contribution must result from community labor, industry, or expense. Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956); Lane v. Lane, 375 So.2d 660 (La.App. 4 Cir. 1978), writ denied, 381 So.2d 1222 (La.1980).
Defendant argues that the increase in value of plaintiff's partnership interest, while they were married, resulted from plaintiff's common labor performed for the partnership and from plaintiff's reinvestment of community funds in the partnership. However, the trial court found that she had failed to prove that this increase was due to the expenditure of community funds or labor. We disagree and conclude that the trial court committed manifest error in making this finding.
The trial court noted that while the value of plaintiff's partnership interest had increased during the parties' marriage, "... this increased value is just as much attributable to inflation, the chances of the trade, the workings and labor of other partners, and the general rise in the value of property".
Abraham set forth, on page 739, the following rule with respect to the burden of proof in cases such as this:

*798 "[4] Defendant's contention that the increase of the capital and undivided profits of Helshro is "due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade" is not substantial. It is clear that the growth and success of the business is chiefly due to the efforts of defendant, who has been in sole control of its management over the years, although there can be little doubt that general prosperity and inflationary values have played a prominent part in the accretion. However, this fact does not render Article 2408 of the Code less appropriate for, when it is shown that community labor, expenses or industry has provided an increase to the separate property, the burden shifts to the owner of the separate property to rebut this proof and affirmatively establish that the increase is due only to the ordinary course of things, rise in values or chances of trade."5 (Emphasis ours).
It is apparent that the trial court erroneously shifted the burden of proof with respect to the effects that the ordinary course of things, rise in values, or chances of trade had on the increase in value of plaintiff's separate property from plaintiff to defendant. Plaintiff had the burden of proving that the increase in value of his separate property was due only to the ordinary course of things, rise in values, or chances of trade under Abraham.
See also Deliberto v. Deliberto, 400 So.2d 1096 (La.App. 1 Cir. 1981).
However, Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3 Cir. 1976), writ denied, 342 So.2d 217 (La.1977), citing Succession of Rusciana, 136 So.2d 509 (La.App. 1 Cir. 1961), set forth, on page 901, the following with regard to the burden of proof placed on a party seeking reimbursement under LSA-C.C. Article 2408:
"In order to receive reimbursement for the enhanced value of the property under Civil Code Article 2408, a party must show: (1) that the improvements did in fact enhance the property; (2) that the improvements were made with community funds or joint labor; (3) the value at the commencement and dissolution of the community; and (4) that the enhancement did not result in the ordinary course of events, i.e. a natural appreciation of immovable property, etc." (Emphasis ours.)
It can be seen that the fourth requirement in Fontenot conflicts with the emphasized portion of Abraham by shifting the burden of proving that the enhancement did not result in the ordinary course of events to the party seeking reimbursement. Instead, under Abraham, as noted above, the owner of the separate property, against whom reimbursement is sought, must prove that the enhancement to his separate property resulted solely from, "... the ordinary course of things, rise in values or chances of trade", once the party seeking reimbursement has shown that, "... community labor, expenses or industry has provided an increase to the separate property".
To the extent that Fontenot ignores the clear dictates of Abraham and attempts, in item 4, to shift the burden of proof as to the reason for enhancement, it is incorrect and will not be followed.
The evidence indicates that plaintiff devoted all of his work efforts to the Downs Furniture Company during his marriage to defendant. The partnership agreements provide that plaintiff, "... is hereby named and designated the managing partner, and as such is placed in general charge of the affairs of the partnership and shall have general control, direction, and administration of the business affairs of the partnership". Plaintiff has exercised these powers throughout the existence of the partnership and it is obvious that the growth and prosperity enjoyed by it is largely attributable to his capable management of its affairs. Thus, we find that the enhancement in value of plaintiff's partnership interest is largely the result of his community labor given to the partnership.
Defendant further argues that plaintiff reinvested community funds (in the form of his share of the profits of the partnership) *799 back into the partnership and that this also enhanced the value of his interest therein.
The evidence shows that during the 24 years that the parties were married, plaintiff's share of the partnership's profits amounted to $307,957.34. This amount was credited to his capital account. However, during that same period of time, plaintiff withdrew only $213,743.70, which he used for community purposes. Thus, if his share of the partnership's profits were community property, then he reinvested some $94,213.64 in community funds back into the partnership. Roberts testified that plaintiff was allowed to withdraw funds against his capital account whenever he wished to do so and for any purpose. He indicated that the account could be characterized as a "drawing account" as well as a "capital account".
Succession of Hollier, 158 So.2d 351 (La. App. 3 Cir. 1963), writ granted, 247 La. 384, 171 So.2d 656 (1965), on remand, 184 So.2d 790 (La.App. 3 Cir. 1966), writ denied, 249 La. 203, 186 So.2d 160 (1966), held at 158 So.2d 358 that:
"[9] Under the law and jurisprudence of this State the share of the profits which a partner derives from a commercial partnership belongs to the community of acquets and gains which exists between him and his spouse, even though the partnership may have been formed prior to the marriage of the partner. LSA-C.C. Article 2402; Denegre v. Denegre, 30 La.Ann. 275; Succession of Ratcliff, 212 La. 563, 33 So.2d 114; Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679; Peltier v. Begovich, 239 La. 238, 118 So.2d 395; Thompson v. Bradley, La.App. 4 Cir., 142 So.2d 540."
We find that when a husband's share of a partnership's profits is made available to him in such a manner that he may withdraw them from the partnership at any time and for any purpose, then those profits represent income to him which is community property during the existence of the community. See Ogden v. Ogden, 331 So.2d 592 (La.App. 1 Cir. 1976), writ denied, 337 So.2d 523 (La.1976); Cf. Guilott v. Guilott, 361 So.2d 1271 (La.App. 3 Cir. 1978), writ denied, 363 So.2d 68 (La.1978). We further find that defendant has proven that plaintiff's partnership interest was enhanced by the reinvestment of community funds. Plaintiff has failed to affirmatively establish that the increase was due only to the ordinary course of things, rise in values, or chances of trade.
Plaintiff's share of the capital and undivided profits of the partnership was worth $38,089.18 at the time the parties were married. It increased in value to $103,507.92 at the time they were judicially separated. Thus, the value of plaintiff's separate property was enhanced by the sum of $65,481.74, and defendant is entitled to recover one-half of that amount under the provisions of Civil Code Article 2408, or $32,709.37. See Abraham v. Abraham, supra.

DEFENDANT'S RIGHT OF REIMBURSEMENT
Defendant contends that she is entitled to be reimbursed in the amount of $66,890.50 for her separate property (money) delivered by her for use by the community. The trial court found that plaintiff was entitled to be reimbursed in the amount of $2,217.60 for this item.
Paragraph XIX of plaintiff's third supplemental and amending motion to traverse proces verbal of inventory reads as follows:
"Declaring the community of acquets and gains indebted unto the separate estate of Mattie Rose Ferguson Downs for all sums delivered for use to the community and which said sums total $66,890.50."
Defendant attempted to present evidence to show that she was entitled to the amount claimed in the paragraph reproduced above. However, plaintiff objected to its introduction, arguing that such evidence concerned issues not raised by the pleadings. The trial court sustained the objection, stating that, "I don't think this allegation is sufficient to put on this proof since we have the fact pleading in Louisiana". The trial court then allowed defendant to place the evidence in the record under a proffer of proof. See LSA-C.C.P. Article 1636.
*800 The law and jurisprudence are clearly to the effect that harsh rules of procedure are not favored and that pleadings should be liberally construed so as to serve the ends of justice rather than technical niceties. LSA-C.C.P. Article 865; Buckley v. Nat Harrison & Associates, 245 So.2d 522 (La.App. 3 Cir. 1971). However, while we recognize that pleadings are to be construed so as to afford a litigant his day in court, they are also to be construed so as to do substantial justice for both parties. LSA-C.C.P. Articles 865 and 5051; Roy v. Commercial Union Assurance Company, 385 So.2d 1273 (La.App. 3 Cir. 1980).
We find that the trial court erred in sustaining plaintiff's objection to the introduction of evidence by defendant concerning the issue of whether the community was indebted to her for her separate property delivered to it. The paragraph from defendant's pleadings alleges sufficient facts to place plaintiff on notice that such an issue was being raised. Thus, we will consider the evidence contained in defendant's proffer.
Defendant contends that under the provisions of LSA-C.C. Article 2391, she has an absolute right to the restitution of her paraphernal effects, either delivered to plaintiff or expended for the benefit of the community. However, the trial court found that defendant had failed to prove that she had expended any of her separate funds for the benefit of the community, except for $1,717.60 she had used to pay off the mortgage on a home which she acquired during the partition of community property belonging to her and her first husband, John Barnett, and $500.00 she had paid as a down payment.
Slater v. Culpepper, 99 So.2d 348 (La. 1957), stated on page 360 that:
"Under our law the wife, unlike the husband, has the absolute right to restitution for her paraphernal effects and their fruits, either delivered to her husband or delivered for use to the community, save in instances governed by Article 2389 of the Civil Code, which is not applicable here. In the case of the husband, it is incumbent upon him to establish that his separate property has been employed to enhance the community at its dissolution. Munchow v. Munchow, 136 La. 753, 67 So. 819; Vicknair v. Terracina, 168 La. 417, 122 So. 276; Succession of Provost, 190 La. 30, 181 So. 802 and Abunza v. Olivier, 230 La. 445, 88 So.2d 815. But, in the case of the wife, the right to restitution is unqualified, Article 2391 of the Civil Code providing:
`The wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed.'"
See also Reynolds v. Reynolds, 388 So.2d 1135 (La.1980); Lane v. Lane, supra.
However, where separate funds of the wife are substantially commingled with community funds in bank accounts so that funds delivered by the wife to the husband cannot be traced to her separate funds, she is not entitled to restitution. Paxton v. Bramlette, 228 So.2d 161 (La.App. 3 Cir. 1969), writ denied, 255 La. 241, 230 So.2d 92 (1970); Gregory v. Gregory, 223 So.2d 238 (La.App. 3 Cir. 1969); Slater v. Culpepper, supra. Nevertheless, this change in the legal status of a bank account does not relieve the community estate of the obligation of restoring to the wife's separate estate, any separate funds which were deposited in the account after it became community property. Slater v. Culpepper, supra.
The evidence shows that until 1968, the only funds that had been deposited in defendant's checking account were wages, which she had earned from employment prior to her marriage to plaintiff, and gifts from her mother and aunt. Defendant inherited numerous shares of stocks and bonds on July 12, 1968, and the income from these stocks and bonds were deposited in her checking account. Thus, she began to commingle community property (the income from her stocks and bonds) with her separate funds in her checking account. Defendant deposited an average of $1373.52 per year, in income from her stocks and *801 bonds, for the years 1968 through 1976, while she deposited an average of $13,747.43 per year, for those same years, in funds she received from the sale of her separate property, gifts from others, maturing bonds, bank loans, the repayment of funds she lent to others, and unknown sources. Defendant testified that after 1968, she was unable to tell whether the improvements she made on the community home were made with her separate funds or community funds.
Our review of the record establishes that the trial court's findings that defendant had commingled the funds in her checking account to the point that all of the funds became community property and that she was unable to prove that improvements were made to community property with her separate funds is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The evidence shows that the checking account is still maintained in the name of the defendant and remains in her possession. Plaintiff has made no claim to any of the funds in this account. Thus, there is no restitution to be made by the community to defendant for any of her separate funds placed therein.

PLAINTIFF'S PARTNERSHIP INTEREST IN DOWNS INVESTMENT COMPANY
Defendant contends that the trial court erred in failing to find that plaintiff's partnership interest in the Downs Investment Company is community property. However, as the following excerpt from the trial court's written reasons for judgment shows, the trial court did make such a finding:
"For the above reasons there is judgment herein ordering the public sale of Mr. Downs' share in the Downs Investment Company. After the Sheriff has received the last and highest bid the interest of Mr. Downs must be offered to his partners as they have the right of first purchase. The remaining sums are be divided ½ each as beloning to [sic] Mr. Malcolm C. Downs and Mrs. Mattie Rose Downs."
A reading of plaintiff's brief submitted to this Court shows that he was under the impression that such a finding had been made. However, in the judgment submitted to and signed by the trial court, it is ordered that the immovable property owned by the Downs Investment Company be partitioned by licitation with one-fifth of the proceeds to be divided between plaintiff and defendant.
We find that an error was made in drawing up the judgment that was eventually signed by the trial court. We will remand this case to allow the trial court to amend its judgment to conform with its written reasons for judgment and with the apparent intentions of both parties, i.e., that plaintiff's interest in the Downs Investment Company be partitioned by licitation with each party receiving one-half of the proceeds therefrom.
For the above and foregoing reasons, the judgment of the trial court is reversed in part, and judgment is rendered in favor of defendant recognizing her right to recover the sum of $32,709.37 representing one-half of the increase in value of plaintiff's partnership interest in the Downs Furniture Company occurring during the parties' marriage. In addition, the case is remanded to the trial court to allow it to amend its judgment to order a partition by licitation of plaintiff's partnership interest in the Downs Investment Company. The trial court's judgment is affirmed in all other respects.
All costs of this appeal and in the trial court are to be paid from the proceeds realized from the sale of the community property belonging to the parties.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] See Kittredge v. Grau, 158 La. 154, 103 So. 723 (1925); State ex rel. Waterman v. J. S. Waterman & Co., Inc., 178 La. 340, 151 So. 422 (1933); Lane v. Lane, infra.
[2] LSA-C.C. Art. 2408 was repealed by Acts 1978, # 627, § 6, effective January 1, 1980. However, this act was repealed in its entirety by Acts 1979, # 709, § 5, effective January 1, 1980, which also repealed LSA-C.C. Article 2408.